THOMAS G. GRAHAM, CLAIMANT AND APPELLANT, v. TREE
FARMERS, INC., EMPLOYER, DEFENDANT AND APPELLEE.
No. 10554
Submitted June 4, 1963. Decided September 16, 1963.
385 P.2d 83

Goldman & Jordan, Lee A. Jordan (argued), Missoula, for appellant.

Garlington, Lohn & Robinson, Sherman V. Lohn (argued), Harold L. Holt (argued), Missoula, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the claimant Thomas Graham from an order and judgment of the district court of the fourth judicial district affirming the findings of fact, conclusions of law and order of the Industrial Accident Board denying the claimant further benefits and dismissing his claim.

The facts which give rise to this appeal are as follows: The claimant was injured on October 12, 1959, while working in the woods as a tong slinger. The employer, Tree Farmers, Incorporated, was enrolled under Plan One of the Act as a self-insurer. On October 28, 1959, Graham's claim for compensation was received in the Industrial Accident Board. Compensation was paid by the employer to Graham until January 31, 1960. As a result of the employer's failure to pay further compensation the claimant requested a hearing and the case was set to be heard in Missoula. The employer and claimant on March 31, 1960, stipulated that the claimant should receive compensation until a further order of the Board. Due to this stipulation, the hearing scheduled before the Board was vacated. On July 25, 1960, the employer requested that the matter be set for hearing and a hearing was set for October 25, 1960.

At this hearing the claimant testified in detail as to his duties as a tong slinger; the wages he received therefrom; the details of the accident; the nature and extent of his injury and the treatment he was receiving; and the jobs he had taken since his injury. Claimant's physician testified as to the type and extent of treatment which he administered; the claimant and the claimant's wife testified as to his present physical diffi-

culties. Witnesses were called by the defendant who testified as to the claimant's present salary, and his salary while he worked for the defendant.

Following this hearing the Board made several findings of fact and conclusions of law. In substance they found that the claimant was injured in an accident in the course of his employment, and at the time his average straight time earnings were about $104.40 per week; that he now was earning $79.15 per week; that he needed further period of medical treatment to secure maximum recovery following which a determination would be made as to whether the injury was permanent; and that such time for this purpose would be twenty-six weeks. From these facts the Board concluded that claimant suffered an accidental injury entitling him to compensation which was paid in full to August 29, 1960; that the claimant was entitled to further compensation for partial disability at the rate of sixty-six and two-thirds percent of the difference between his weekly earnings at the time of the accident and his weekly earnings following his return to work which amounted to $15.49 per week; that the employer was entitled to a credit for the compensation paid in excess of this amount from August 29, 1960; that this compensation was to be paid for twenty-six weeks, during which period the claimant would take all necessary medical treatment in order to effect a maximum recovery and if during this twenty-six week period a doctor should release him as fully able to return to work compensation would be suspended. The Board retained jurisdiction to further adjudicate the claim.

On November 23, 1960, the claimant petitioned the Board for a rehearing giving as reasons the fact that the finding that the claimant's earnings at the time of the accident were $104.40 was incorrect and that the finding that the claimant would achieve maximum recovery in twenty-six weeks was not supported by the evidence; that the Board's conclusions of law which settled the claimant's compensation rate at $15.49 per

week were not justified; nor was their conclusion that the compensation should be paid for twenty-six weeks. Tree Farmers, Inc., likewise petitioned for a rehearing on the ground that the order did not allow the employer credit for compensation paid while the claimant was employed and that the finding of fact which found the claimant's average weekly wage was $104.40 was not supported by the evidence.

In January of 1961, without a formal rehearing the Board issued an amended order finding that the claimant worked from July 25 to August 25, 1960, and that on August 29, 1960, he received other employment and is capable of earning $95.04 per week and found his average weekly earning at the time of the accident was $117.15 and that sixty-six and two-thirds percent of this difference was $14.73 per week. It therefore ordered the defendant Tree Farmers, Inc., to pay to the claimant $14.73 per week for twenty-six weeks from August 29, 1960, but that the defendant could take credit for the overpayment of compensation between July 25, and October 16, 1960, by deducting the amount from future payments and ordered that in the event the claimant's doctor should release him to full duty, compensation should be terminated; that if such release was not given during the twenty-six week period the Board should hold a further hearing.

The provisions of this amended order expired so another hearing was set for April 17, 1961, before George Wood, a referee for the Industrial Accident Board. Claimant's attorney objected to Wood's designation as referee in a letter to the Board which objection the Board overruled and on April 26, 1961, the hearing was had before referee Wood with the claimant testifying, though nothing new was brought out. His testimony revealed that he was continuing to see his doctor and that he was still employed as a janitor at the high school. Claimant again called two witnesses who testified as to the nature of tong slinging as heavy or light work. Claimant's doctor testified that he had seen and examined the claimant between

the hearings and that he had not observed any appreciable change in the claimant's condition. Tree Farmers, Inc., called as its witness a doctor who testified there were no positive findings with reference to the claimant's subjective complaints. Claimant's counsel then made arrangements to have the examination of a Dr. James Dunlap of Spokane put in the record. This report was submitted to the defendant's counsel and sent to the Board.

On June 7, 1961, the referee made certain findings of fact and conclusions of law. These changed the former findings and conclusions in these respects. The referee found that the medical evidence showed very little evidence of disability and showed that any disability the claimant now suffered was due to arthritic changes in his lower back which pre-existed the accidental injury; that the medical evidence showed that the claimant could again be brought to the asymptomatic phase; that the medical evidence showed that the claimant should not return to his former employment not because of the physical inability to do the work, but due to the chronic changes in his lower back which would be aggravated by the heavy lifting, bending or stooping. From this the referee concluded that the evidence did not support the claimant's claim for additional compensation.

These findings of fact and conclusions of law of the referee were adopted by the Industrial Accident Board on June 26, 1961.

On July 11, 1961, the claimant again petitioned for rehearing, which was denied by the Board. Then on July 20, 1961, the claimant filed a notice of appeal from the order of the Industrial Accident Board dated June 26, and from the order denying a rehearing. The case was set for trial on March 19, 1962.

At the trial in the district court before Judge Foot the claimant's counsel was granted permission to introduce new evidence. The claimant again testified as to the condition of his

back and stated he was now troubled with frequent episodes of vomiting and nausea, he also testified as to his inability to drive a bus or lift heavy objects, and as to a prescription the defendant's doctor had given him. The claimant's wife testified in detail about the medicine which the claimant had been taking and about his attacks of nausea and vomiting. Claimant then called the referee of the last hearing, George Wood, who stated that he was the founder, owner and operator of a business known as Compensation Adjusters, Inc., and as to the purpose of this business. Wood further testified that he was the executive secretary of the Montana Self-Insurer's Association. The defendant's only witness was Robert Swanberg, Chairman of the Industrial Accident Board who stated that he reviewed the record of Referee George Wood and that he made the order in that specific instance.

Concerning this particular case and in view of the charges made against Examiner Wood, Mr. Swanberg testified before Judge Foot as follows:

"Q. Now, thereafter, on April 25, 1961, there was a hearing held before George Wood, are you acquainted with that? A. Yes.

"Q. Now after that hearing was held were there any transcripts of the hearing filed with the Board? A. Yes.

"Q. In this specific case, prior to the time Mr. Wood made any findings of fact in this case or conclusions of law, those being dated June 7, 1961, did you as Chairman of the Board, Mr. Swanberg, review that record? A. The transcript was filed on June 6, 1961, and the findings of fact and conclusions of law of the referee received on June 20. Yes, I did.

"Q. At the time the order of the Board was made in this case on June 26, 1961, had you reviewed the record as well as the findings of fact and conclusions of law? A. Yes, sir.

"Q. And did you complete the order making the award, or rather, making the order in this specific case? A. Yes, that order is my handiwork."

Judge Foot on September 18, 1962, found that the record certified by the Industrial Accident Board contained evidence legally sufficient to support all the findings made therein and that all findings, conclusions and orders entered were correct; that the additional testimony and evidence was not sufficient to justify any change in the findings, conclusions or orders and ordered that all orders of the Industrial Accident Board, particularly the order of June 26, 1961, and the one denying the rehearing should be affirmed.

The appellant sets forth two specifications of error.

1. The district court erred in adopting and approving that portion of the Industrial Accident Board's findings of fact and conclusions of law that established appellant's pay rate as $95.04 per week while he worked as a janitor at the Missoula County High School.

2. The district court erred in sustaining the Industrial Accident Board's order of June 26, 1961, denying the appellant further benefits.

Concerning specification 1, as to appellant's weekly wage, he alleges that the annual wage was $4,115 per year up to July 1, 1961, at which time his annual pay increased to $4,299.96. Appellant figures the weekly pay by dividing 52 weeks into the two annual wage figures and gets a weekly wage of $79.13 prior to July 1, 1961, and a weekly wage of $82.69 after July 1st. The Board's examiner had found a weekly wage of $95.04 up to July 1, 1961. Appellant alleges that this wage differential is of the utmost import to the appellant due to the Board's ruling that he was entitled to sixty-six and two-thirds percent of the difference in the wages he received at the time of his injury and those he received as a janitor for a period of twenty-six weeks beginning August 29, 1960. That the figure of $14.73, being the difference between $117.15, the weekly wage at time of injury and $95.04 his weekly wage as a janitor, was erroneous and as a consequence the appellant was underpaid for those twenty-six weeks. While

counsel for appellant quotes numerous statutes and opinions of this court that this Act is to be liberally construed he completely overlooked the one statute and one case of this court in point on what is a work week.

R.C.M.1947, § 92-422, defines the word "week" as:

" 'Week' means six working days, but includes Sundays."

In House v. Anaconda Copper Mining Co., 113 Mont. 406, 126 P.2d 814, this court said concerning the construction of the Workmen's Compensation Act as to what constitutes work week so far as compensation is concerned that section 92-422 (section 2874, R.C.M.1935) was controlling. Speaking for the court, Justice Erickson said:

"In the first place, it may be noted that the board has always based awards on the basis of a six-day week. If appellant's contention is correct, then if an employee were injured on his first day on the job, his compensation would be the minimum, as his wage received would be one day's wage. The chairman of the Industrial Accident Board, appearing by brief and in person as *amicus curiae*, points out one other possible result of a holding as the appellant desires. Suppose A and B were engaged in the same industry. A employs 100 men six days a week, and B employs 200 men three days a week. Since the man-hours worked are the same, the industrial risks are the same and each will have the same number of accidents. If B were allowed to discharge his obligation by paying his men on the basis of a three-day week, he would pay out only half as much as A on the basis of the same number of man-hours at work. If B pays on the basis of a six-day week, the cost of compensation to him will be the same as to A, but no more.

"The legislature had but one purpose in discussing 'week', 'wages,' and 'weekly wages received,' and that was to fix a base from which compensation was to be determined by application of certain percentages. Appellant, in urging that sections 2874 and 2875 [Rev.Codes 1935, now §§ 92-422, and 92-423, R.C.M.

1947] do not apply, relies on the language of section 2853 [Rev. Codes 1935, now § 92-401, R.C.M.1947]:

" 'Unless the context otherwise requires, words and phrases employed in this act shall have the meanings hereinafter defined.' It argues that when in section 2912 it is provided that the compensation shall be based on the weekly wage received, the context of that section requires that sections 2874 and 2875 have no effect. If that were true, then in computing compensation the last line of section 2875, to the effect that overtime shall not be considered in determining wages, would not apply, and if a man were injured in the week in which he put in overtime, his compensation should be based on the wages actually received, including the overtime. Obviously the legislature in making this provision intended it to have effect. Under appellant's position, if a man were injured in a week when he worked but one day when he usually worked six days, his compensation would be based on the actual wage received for that week, or one day's wage. It is suggested that since five days make up the usual work week, compensation should be based on five times the daily wage, even though the injured workman worked more or less than five days and received pay accordingly. There is no warrant in the Compensation Act for that view. Either sections 2874 and 2875 have effect so that compensation must be based on six times the daily wage, or else section 2912 has the effect of making them imperative, and compensation must be based solely on the actual wage received at the time of the injury. If the latter view is correct, the compensation must be determined by the actual wage received, be the wage small because the injured workman did not work full time, or be the wage swollen by overtime. The result of such a view would be that instead of an Act which would be relatively certain and uniform in its operation and one which would adequately fulfill its purpose, which is to provide for compensation in the nature of insurance, rather than in the nature of damages, our Act would operate largely

by the laws of chance and would result in great inequality in the rate of compensation paid to injured workmen receiving the same daily wage and engaged in the same industry. In order to prevent just such a situation, section 2874 defining the week, and section 2875 defining wages and eliminating overtime as a factor in computing compensation were enacted. It wanted to make the base definite, and further it determined that within certain limits a workman receiving higher pay should draw more compensation than one drawing a lesser wage. The context of section 2912 does not require a holding that sections 2874 and 2875 be given no effect. At the time Chapter 96, Laws of 1915, was passed, there was no conflict between 'weekly wages received' and ' "week" means six working days,' as the weekly wages would be six times the daily wage. An examination of Chapter 96, now appearing with amendments, as Chapter 256 Political Code, reveals that the only possible application of the definitions found in sections 2874 and 2875 is in the determination of compensation to be paid, and no other application of these definitions is suggested by counsel."

Considering the above statute and holding of this court, neither the Board nor the district court erred in finding $95.04 as the weekly pay for appellant.

As to specification of error two, the appellant takes a shotgun approach to scatter as much birdshot into one specification as possible. While not raised as a separate specification the effort of counsel is devoted to showing bias and prejudice on the part of the hearing officer.

The attention of this court is directed to the case of State ex rel. Fish v. Industrial Accident Board, 139 Mont. 246, 251, 362 P.2d 852, where this court considered the question of prejudice of a hearing officer appointed by the Board. Oddly enough it was the same officer protested in this case. There, we said:

"We are not prepared to say that *ipso facto* an insurance

adjuster, not representing the carrier, has a conflict of interest. In passing, we do warn the Board and all administrative boards and tribunals that they should zealously guard against any appearance of unfairness in the conduct of their hearings."

Most certainly a claimant in such a hearing is entitled to have his matter heard by an unbiased and unprejudiced examiner at this state of the proceeding, as he would be to a later hearing on appeal to the district court. While the legislature has not given claimant the right to disqualify examiners, this court has said in State ex rel. Fish v. Industrial Accident Board, supra, that it will carefully review all administrative hearings to guarantee the fair conduct of their hearings.

In order to understand the application of what this court said in the Fish case, supra, to this case, we must look to the history of the two cases.

The Fish case came before this court in an original proceeding on May 11, 1961, having been filed May 1, 1961. The case was decided June 9, 1961. In this cause the letter from appellant's counsel protesting Mr. Wood's appointment was received by the Board March 29, 1961. The protest was denied and Mr. Wood held the hearing April 26, 1961, just six days before this court granted the alternative writ in the Fish case, and seventeen days before it was heard by the court. It must be remembered that Mr. Wood was also the examiner being protested in the Fish case. As previously shown, Wood filed the transcript of hearing with Mr. Swanberg on June 6, 1961. His findings of fact and conclusions were filed on June 20, 1961, and the Board's order on June 26, 1961. The Fish case, supra, was decided June 9, 1961, some 3 days after the transcript of hearing was filed with the Board, and the Board had this case to consider some eleven days before Mr. Wood filed his findings of fact and conclusions of law, and some sixteen days before adopting these findings of fact and conclusions of law and making its order.

Clearly, the proper and safest action of the Board after this

court's opinion in the Fish case, supra, would have been to have ordered a rehearing before another examiner. The Board and all other administrative boards and tribunals were directed in the above opinion, that they should zealously guard against any appearance of unfairness in the conduct of their hearings. Surely the Board in the instant case should have seen that the insurance adjuster, herein involved, was not free of any interest or prejudice that would cleanse the hearing of the possibility that bias might exist.

In view of this situation, if we could perceive from this record any prejudice to the appellant we would set aside and reverse this cause, but we are confronted here with other considerations. The chairman of the Industrial Accident Board reviewed the record made before the hearings examiner. There is no charge of any impropriety in the holding of the hearing or any adverse ruling affecting the claimant. The Industrial Accident Board after reviewing the record made its order, and upon the appeal to the district court, the district judge was fully aware of the contentions of the claimant with reference to the hearings examiner, and there is here no charge of bias or prejudice as to the judge, and upon the complete record of the case before the Industrial Accident Board and such additional evidence as was offered in the district court hearing such district judge concurred in the determination theretofore made by the Industrial Accident Board; and, finally, because of this controversy we have fully and carefully reviewed the entire record in this cause, and we are of the opinion that the order of the Industrial Accident Board as affirmed by the district court was a proper one to have been entered in light of the evidence here existing.

Judge Foot made these observations appearing in the record at the time of trial:

"Now, this Court is not in a position of having to consider whether Mr. Wood was biased or prejudiced in arriving at those rulings, Court considers it not on his findings and conclu-

sions, but on the evidence taken and for that reason it occurs to me, in the last analysis at least, it can make no difference to this Court or appellate Court whether he is biased or not, * * * this Court doesn't care if he arrived at findings and conclusions * * * because he was biased, *but simply did he arrive at the right conclusions as supported by the record.* If he didn't this Court would propose to correct them, regardless of his reason for arriving at them, and if he did the Court does feel the record does support his findings and conclusions and that they should be sustained, and this Court would sustain them regardless of the fact that incidentally along the line in addition to being able to come up with the right answer in such a case he was biased to begin with * * * Even so if he took the record fairly, and I heard no objection as to the matter of conducting a hearing, * * * took the testimony, and it is all in there before this Court now, what difference does it make to this Court, as I say, along the line it turns out he was biased and he let that sway his thinking, *if nevertheless he came up with the right answer."* Emphasis supplied.

We should comment further, claimant filed his appeal to the district court on July 20, 1961, and on July 21, 1961, filed an affidavit of disqualification against the district judge; another judge assumed jurisdiction on August 1, 1961, claimant filed an affidavit of disqualification against the second district judge on August 1, 1961, and then Judge Foot was requested to and did assume jurisdiction. In his brief the claimant contends that the hearings officer, the Industrial Accident Board and the district court were all in error in their holdings in this cause. In oral argument he asserted that the Industrial Accident Board and the hearings officer were all biased, prejudiced or had a conflict of interest. We do not feel that failure to agree with the contentions of claimant in any manner exhibits bias or prejudice. If that were true then the district court and this court are to be considered as biased and prejudiced because we did not agree with claimant's contentions.

Whether the court erred in upholding the Board's findings as to no loss of ability to earn, under the particular circumstances of this case, necessitates a factual accounting of appellant's earnings over the past several years, both before and after his injury, and cases of this court covering "loss of earning power as tested by loss of ability to earn in the open market."

The record shows that appellant earned in wages, not overtime, during the two years prior to injury the sum of $3,641.58 in 1958, and $3,761.79 in 1959 for a total of $7,403.37. In 1958 he earned $637.42 overtime and in 1959 he earned $1,479.26 overtime. His total income regular wages plus overtime came to $4,279 in 1958, and $5,241.05 in 1959. Appellant was injured on October 12, 1959, and collected Industrial Accident benefits up through October 16, 1960, in an amount of $2,252.50. On August 29, 1960, he was employed by the Missoula County High School at an annual wage of $4,115 which wage went to $4,299.96 commencing July 1, 1961.

Without overtime the appellant's annual wage as a janitor showed improvement, but considering the overtime he shows a loss of wages had he continued in his employment as a "tong slinger."

The question presented by this second specification of error is not whether there has been a loss of earnings or income caused by the injury, but rather has there been a loss of earning capacity—a loss of ability to earn in the open labor market.

A labor market, within the meaning of our statute is that place where there is a market for the type of services which he offers within a geographical area in which he offers them. See Greenfield v. I. A. B., 133 Mont. 136, 320 P.2d 1000, Friedt v. I. A. B., 136 Mont. 141, 345 P.2d 377.

Here the district court found that the evidence failed to show any inability to obtain employment in the open labor market due to the injuries and the record fully supports such find-

ings. This court quoting from Horovitz on Workmen's Compensation, p. 276, said in Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 P.2d 340:

" 'Actual wages earned do not necessarily establish an employee's earning capacity. It is within the province of the trier of facts to find that the amount which he actually earned represented what he "was able" to earn, but evidence of a greater earning capacity may not be excluded, nor of a lesser, i. e., * * *.' "

We are constrained here, while disapproving the use of Mr. Wood as a hearings officer, in view of the preponderance of proof in this record, to fail to see where any different result could be reached and for that reason we feel the error to be such that it does not call for a reversal and further hearings so far as the claimant is concerned.

The district court was not in error in determining from this record that there was a loss of ability to earn. The district court did not err in sustaining the conclusions of the board.

The judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES and DOYLE, concur.

MR. JUSTICE ADAIR:

I concur in the result but not in all that is said in the foregoing opinion.