No. 12384

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

DUANE OLSON,

Claimant and Appellant,

-vs-

MANION'S INC., Employer,
FEDERATED MUTUTAL HARDWARE &
IMPLEMENT INSURANCE COMPANY,

Defendant and Respondent.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert Keller, Judge presiding.

Counsel of Record:

For Appellant:

McGarvey, Morrison and Hedman, Kalispell, Montana.
James D. Moore argued, Kalispell, Montana.

For Respondent:

Korn, Warden, Walterskirchen and Christiansen,
Kalispell, Montana.
Meritt N. Warden argued, Kalispell, Montana.

---

Submitted: April 24, 1973

Decided: MAY 15 1973

Filed: MAY 15 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is from a decision of the district court of the eleventh judicial district, Flathead County, affirming an order of the Industrial Accident Board denying benefits to plaintiff Duane Olson.

On January 23, 1962, Olson in an industrial accident sustained injuries which impeded his movement and ability to assume certain positions. A claim was filed by Olson and accepted by the Industrial Accident Board under Plan 2 of the Workmen's Compensation Act, carried by his employer Manion's Inc., a car dealership and garage in Kalispell. At that time temporary total disability compensation was paid for a period of 9 and 4/7ths weeks. In 1967 the Industrial Accident Board on rehearing determined that Olson had suffered permanent partial disability from 5% of the back to 20% of the body as a whole. Later that year, a subsequent application for rehearing was denied by the Board and Olson appealed the Board's order to the district court.

After several continuances, the district court on July 5, 1972, ruled against Olson, adopting the Board's findings of fact and conclusions of law which denied admissibility of certain evidence offered by Olson on the ground it was without legal effect.

The additional evidence offered by Olson and refused by the Board and the district court was: (1) At the time Olson sustained the compensable injury in 1962 he was earning $2.60 per hour but the same job at Manion's paid $4.60 per hour in 1972. (2) Olson's present job, which pays $3.80 per hour, is substitute employment because he is physically unable to perform the job he held prior to injury.

On appeal the sole issue is whether the Industrial Accident Board and the district court erred in refusing to admit and consider the offered evidence of impairment of earning capacity.

Section 92-703, R.C.M. 1947, establishes the amount of compensation to be paid in cases of permanent partial disability. It provides for a fixed percentage (subject to a stated maximum):

"* * * of the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter * * *". (Emphasis added)

Olson relies on cases decided by this Court applying section 92-703, in which the terms "loss of earning capacity" and "loss of ability to earn in the open market" were used: Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 P.2d 340; Mahlum v. Broeder, 147 Mont. 386, 412 P.2d 572. He also cites section 92-838, R.C.M. 1947, which states:

"Whenever this act or any part or section thereof is interpreted by a court, it shall be liberally construed by such court."

It is fundamental to the issue of this case to keep in mind that the workmen's compensation system is not based on common law tort liability concepts, but rather depends upon the particular statutes which the legislature enacts to create and administer the system. 2 Larson's Workmen's Compensation Law § 57.10, pp.2,3 states:

"It has been stressed repeatedly that the distinctive feature of the compensation system, by contrast with tort liability is that its awards (apart from medical benefits) are made not for physical injury as such, but for 'disability' produced by such injury. The central problem, then, becomes that of analyzing the unique and rather complex legal concept which, by years of compensation legislation, decision, and practice, has been built up around the term 'compensable disability'."

What constitutes a "compensable disability" is not a static concept, particularly in the instance of permanent partial disability. Section 92-830, R.C.M. 1947, empowers the Board at any time after an award is made, to review, increase or diminish that award. Possible bases for review include: changes in the job market affecting the availability of jobs which the disabled can perform; changes in technology or method in a particular job field so as to preclude a disabled person from performing; or,

- 3 -

a determination that subsequent wages earned were based on consideration of sympathy or relationship. None of these situations apply in the instant case. Essentially, Olson is contending that he has a compensable disability based on his inability to do his old job.

99 C.J.S. Workmen's Compensation § 295, p. 1031, states:

"Earning power in same or other employment. It has been held under, apart from, or without reference to, statutes so providing, that the test of an injured employee's right to compensation is his inability by reason of the injury to work and earn wages in the employment at which he was engaged when injured, so that the earning capacity remaining to the employee in other callings cannot be considered. However, it is otherwise under statutes which impose no such limitation, or where the compensation is measured by the loss of ability to earn in any suitable employment or in the same or any other employment * * *.

"The fact that a claimant might have been earning more had he been able to resume, and been promoted in, the employment he was engaged in when injured does not affect the determination. Where the average weekly wages which a claimant is able to earn are not limited to those he could earn in the same employment but include the whole monetary result of a reasonable use of all his powers, mental and physical, whether working for himself or for others and whether or not his earnings are called wages in common speech, no compensation can be had where talents previously undiscovered produce an earning capacity greater than that enjoyed prior to the injury." (Emphasis added).

In Montana's Workman's Compensation Act we find no limitation of consideration to a disabled's earning ability in the same employment, or the same type of employment he was engaged in when injured. Dosen v. East Butte Copper Min. Co., 78 Mont. 579, 254 P. 880; McKinzie v. Sandon, 141 Mont. 540, 380 P.2d 580.

The New Hampshire court in Desrosiers v. Dionne Bros. Furniture, Inc., 98 N.H. 424, 101 A.2d 775, 778, decided under a similar statutory provision an analagous fact situation, and stated:

"In some jurisdictions earning capacity refers only to the employee's capacity to earn in the employment or trade in which he was working at the time of the accident so that for compensation purposes the earning capacity remaining to him in other callings is not considered. * * * Section 23 of our act imposes no such limitation nor has it been so interpreted. * * *

> "The test of compensable disability under our statute is not the employee's ability or disability because of his injury to do his old job. Nor is it what the claimant could have earned but for his injury in the employment or trade in which he was working at the time of the accident. * * * It is the difference between 'his average weekly wage before the injury and the average weekly wage <u>he is able to earn thereafter</u>' with his injury in suitable work under normal employment conditions."

We hold that the test of compensable disability under the Montana Workmen's Compensation Act is "the difference between the wages received at the time of the injury and the wages that such injured employee is able to earn thereafter" in any suitable field of employment or profession he subsequently enters under normal conditions, whether or not his earnings in that field of employment or profession are commonly called "wages".

Olson's contention that this rule makes no provision for "inflation" or "parity" is correct. He makes a meritorious argument supporting the desirability and practicality of such a provision, and we take judicial notice of the fact that prevailing wage scales have risen in the period between 1962 and 1972. However, it is neither the function nor prerogative of this Court to rewrite the Workmen's Compensation Act to include such a provision. That is the function of the legislature.

The courts of this state have followed the directive set forth in section 92-838, R.C.M. 1947, in liberally construing the provisions of the Act, particularly in the interpretation of the terms "in the course of" and "arising out of". But we see no room for interpretation of the words "wages received at the time of injury. As this Court said in Mont. Assn. of Tobacco and Candy Distributors v. State Board of Equalization, 156 Mont. 108, 114, 476 P.2d 775:

> "Where the language of a statute is plain, unambiguous, direct, and certain, the statute speaks for itself and there is nothing left for the court to construe."

The judgment of the district court is affirmed.

_____
Associate Justice

- 5 -

We Concur:

_James L. Harrison_
Chief Justice

_Frank I. Haswell_

_Wesley Castles_

_John Conway Harrison_
Associate Justice.