No. 13287

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

RICHARD L. McALEAR,

Claimant and Appellant,

-vs-

ARTHUR G. McKEE AND COMPANY, EMPLOYER,

and

GENERAL ACCIDENT FIRE AND LIFE
ASSURANCE CORPORATION,

Respondents and Insurers

Appeal from: Workers' Compensation Court-Silver Bow County
Honorable William E. Hunt, Judge presiding.

Counsel of Record:

For Appellant:

Allen L. McAlear argued, Bozeman, Montana

For Respondent:

Henningsen, Purcell and Genzberger, Butte,
Montana
James E. Purcell argued, Butte, Montana

Submitted: October 13, 1976

Decided: DEC 30 1976

Filed: DEC 30 1976

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from the Workers' Compensation Court wherein defendant insurer was ordered to pay plaintiff, Richard L. McAlear, $614.40 partial disability. The facts are:

On October 21, 1974, while employed as a carpenter by defendant McKee, McAlear suffered a broken elbow. It was not disputed that the injury arose out of and in the scope of his employment. Neither are the medical reports which state McAlear suffered a 15% permanent loss of extension in that elbow as a result of this injury questioned.

Immediately after the injury McAlear was examined by Dr. Ellis of Anaconda, Montana, and thereafter referred to Dr. Whitfield of Dillon, Montana and Dr. Losee of Ennis, Montana.

From October 21, 1974, to January 20, 1975, McAlear was physically incapable of working and received $137 per week temporary total disability from defendant insurer. On January 20, 1975, Dr. Losee released McAlear to return to work and McAlear advised defendant insurer of this release. At that time temporary total disability benefits were discontinued.

McAlear then began to seek employment, listing his name with three union locals. However, no employment was available and he remained unemployed until June 1, 1975.

During the period from his release by Dr. Losee, January 20, 1975, until May 2, 1975, McAlear continued to see Dr. Whitfield, receiving a written release from him on May 2, 1975.

On April 23, 1975, defendant insurer offered a partial disability award of $1,394.40 to McAlear for the conceded permanent injury to his elbow. The basis of that award was stated to be that an American Medical Association guide to evaluating injuries interpreted 15% loss of extension to elbow equivalent to 8-1/3% loss of the arm; that loss of an arm entitles one to 280 weeks of

benefits under the Workers' Compensation Laws; therefore 8-1/3% of 280 weeks (23.24 weeks) at a rate of $60 per week equals $1,394.40. Defendant insurer enclosed $780 with this offer to bring the benefits current to April 21, 1975, and advised McAlear that if such a final settlement was agreeable the remaining $614.40 would be paid.

McAlear rejected this offer and filed a claim with the Workers' Compensation Court seeking an extension of the total temporary disability from January 20, 1975, to May 2, 1975, and partial disability beginning May 2, 1975, for 2/3 of his wage loss at a maximum rate of $60 per week for 280 weeks.

The Workers' Compensation Court's final determination was in accord with defendant insurer's offer ordering the remaining $614.40 paid to McAlear.

Two issues are presented for our review:

1) Whether the Workers' Compensation Court erred in refusing to extend the temporary total disability from January 20, 1975, to May 2, 1975?

2) Whether the Workers' Compensation Court erred in its partial disability award?

This being one of the first appeals from the Workers' Compensation Court we refer to Skrukrud v. Gallatin Laundry Co., Inc., decided by this Court on December , 1976, ____Mont.____, ____ P.2d____, ____St.Rep.____, wherein we stated:

> " * * * The law as it applied to judicial review of Workmen's Compensation Division decisions prior to July 1, 1975 is well summarized in Miller v. City of Billings, ____Mont.____, 555 P.2d 747, 749, 33 St. Rep. 984, 986:

> "'The findings and decision of the Workmen's Compensation Division are presumed to be correct and if supported by credible evidence must be affirmed. Section 92-822, R.C.M. 1947 (since repealed); Birnie v. United States Gypsum Co., 134 Mont. 39, 44, 328 P.2d 133; Hurlbut v. Vollstedt Kerr Co., Mont. 538 P.2d

344, 347, 32 St.Rep. 752, 755. The district court must affirm the Division order if the evidence does not clearly preponderate against its findings. Becktold v. Ind. Acc. Bd., 137 Mont. 119, 125, 350 P.2d 383; Stordahl v. Rush Implement Co., 148 Mont. 13, 417 P.2d 95; 3 Larson's Workmen's Compensation Law, § 80.20. Section 92-834, R.C.M. 1947 (in effect in 1966, but since repealed), provided the district court, may upon good cause shown admit additional evidence. Section 92-835, R.C.M. 1947 (in effect in 1966, but since repealed), provided that if this additional evidence is substantial, the district court may be justified in reversing the Division even though the evidence adduced before the Division clearly preponderates in favor of its order. Murphy v. Industrial Accident Board, 93 Mont. 1, 16 P.2d 705; Hurlbut v. Vollstedt Kerr Co., supra.

"'Where the appeal to the district court is heard only on the Division's certified record or when the district court permits additional evidence to be introduced that is not important or adds nothing new to the case, the court is bound by the same rule of appeal which applies where the appeal is heard only on the certified record and the Division is entitled to a presumption the case was decided correctly. Kelly v. West Coast Construction Co., 106 Mont. 463, 78 P.2d 1078; McAndrews v. Schwartz, 164 Mont. 402, 523 P.2d 1379; Erhart v. Great Western Sugar Co., Mont. 546 P.2d 1055, 33 St.Rep. 302.'

"See also: Kimball v. Continental Oil Co., ____ Mont.____, 550 P.2d 912, 33 St.Rep. 517.

"Under the law as it now exists, this Court directly reviews the decision of the workers' court, section 92-852(2), R.C.M. 1947. The workers' court proceedings are administrative in nature and quasi-judicial, sections 92-852(1) and 82A-1016, R.C.M. 1947. The appropriate scope of this Court's review should be no different than it was under former law as expressed in the above cited cases; that is, workers' court decisions will not be overturned if there is substantial evidence to support its findings and conclusions."

We turn now to the first issue. The statutes which govern are section 92-701.1, R.C.M. 1947, which states:

" * * * Total temporary disability benefits shall be paid for the duration of the worker's temporary disability."

and section 92-439, R.C.M. 1947, which defines temporary total disability as:

" * * * a condition resulting from an injury

- 4 -

as defined in this act that results in total loss of wages and <u>exists until the injured workman is as far restored as the permanent character of the injuries will permit.</u>"
(Emphasis added.)

Therefore, temporary total disability ceases when the workman's physical condition is as far restored as the permanent character of the injuries will permit. When the claimant has reached this stage in his healing process temporary total disability ceases, and partial disability begins if there is permanent partial impairment.

The record shows that Dr. Losee released McAlear as of January 20, 1975. Furthermore McAlear himself called and informed defendant insurer that he was released to return to work on January 20, 1975. Dr. Whitfield, in written correspondence, stated that McAlear might have been able to return to work in January but that an official written release was not signed by Dr. Whitfield until May 2, 1975. McAlear further testified that he was seeking work through three union locals from January 20, 1975, the date of Dr. Losee's release, until June 1, 1975, when he obtained employment, and that the only reason for his unemployment during this period was the unavailability of any employment.

Considering this evidence and the law governing temporary total disability, we will not reverse the holding of the Workers' Compensation Court on this issue, since we fail to find any denial of plaintiff's substantial rights as specified in section 82-4216, R.C.M. 1947.

Next, we are asked to review the Workers' Compensation Court's partial disability award.

In the beginning, we note that there are two distinct types of partial disability benefits which a claimant may seek, such being the situation on the date of McAlear's injury. A claimant may elect a disability benefit under section 92-703.1,

- 5 -

R.C.M. 1947, or an indemnity benefit under section 92-709, R.C.M. 1947.

The distinction between these two benefits is that section 92-703.1 bases the benefit upon actual loss of earning capacity resulting from the injury, whereas section 92-709 awards compensation regardless of earnings to compensate for possible loss of earning capacity in the future. Jones v. Glac. General Assurance Co., 145 Mont. 326, 400 P.2d 888.

Applying this distinction to the case at hand, the result is that McAlear was entitled to elect one of two awards, depending upon the record established before the Workers' Compensation Court.

1) McAlear was entitled to proceed under section 92-709 whereby the Workers' Compensation Court could award, as compensation for the partial loss of use of his arm, the full amount allowable under section 92-709 that would result if the arm had been permanently lost, or a proportionately less amount. Obie v. Obie Signs, Inc., 143 Mont. 1, 386 P.2d 68. Defendant insurer made its offer pursuant to this approach and based upon the medical reports of McAlear's doctors that he sustained a 15% permanent loss of extension in his elbow, offered the following evidence. An American Medical Association guide to evaluating injuries stated such a loss of extension in the elbow was equivalent to 8-1/3% loss of the arm. Therefore, the proportionate amount due was calculated to be $1,394.40 [280 weeks (100% loss of arm) x 8-1/3% (actual loss of use in this case) x $60 per week (the maximum weekly rate allowable at the time of McAlear's injury)].

2) The alternate benefit available was under section 92-703.1 which would allow McAlear a maximum of $60 per week for the maximum number of weeks under section 92-709 for the loss of an arm (280 weeks). However, to be eligible for such benefits,

McAlear was required to show actual loss of earning capacity. The test to determine loss of earning capacity is that a claimant must show the inability to obtain employment due to the injuries. Shaffer v. Midland Empire Pack. Co., 127 Mont. 211, 259 P.2d 340.

McAlear failed to fulfill this burden of proof. The testimony was uncontroverted that the sole reason for McAlear's unemployment after January 20, 1975, was that no employment was available. There was no showing by McAlear that the reduction of his earnings after gaining employment, as compared to his earnings prior to his injury, was due to his physical impairment. Nor was he, at any time, refused employment or forced to reject any offered employment because of his physical impairment from the date of his initial release, January 20, 1975, until the time of his hearing before the Workers' Compensation Court.

We find no grounds under section 82-4216, R.C.M. 1947, which would permit reversal of the final decision of the Workers' Compensation Court. The Workers' Compensation Court awarded McAlear benefits in accord with the defendant insurer's offer under section 92-709, R.C.M. 1947, instead of disallowing any benefits at all for McAlear's failure to put forth any evidence entitling him to compensation under section 92-703.1, R.C. M. 1947.

McAlear's contention is correct that a claimant can elect to proceed under section 92-703.1 or section 92-709 when seeking partial disability benefits. However, we do not believe that the Workers' Compensation Court should be restrained from making an award supported by the evidence when the claimant has made an incorrect election in light of the evidence presented.

The judgment is affirmed.

_____
                                Chief Justice

We concur:

_____

_____

_____
Justices

Hon. LeRoy L. McKinnon, District
Judge, sitting in place of Mr.
Justice Wesley Castles.

- 8 -