No. 13695

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

CHRIS W. RAMSEY,

Claimant and Respondent,

-vs-

WILLARD DUNCAN and RONALD G. BAIER,

Employer and

ARGONAUT   NORTHWEST INSURANCE COMPANY,

Defendant and Appellant.

---

Appeal from:  Workers' Compensation Court
Honorable William E. Hunt, Judge presiding.

Counsel of Record:

For Appellant:

Andrew J. Utick argued, Helena, Montana

For Respondent:

Hoven and Brault, Missoula, Montana
Vernon Hoven argued, Missoula, Montana

---

Submitted:  September 23, 1977

Decided: NOV 1 0 1977

Filed:  NOV 1 0 1977

_____
Thomas J. Kearney                    Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Appellant, a Plan II insurer under the Montana Workers' Compensation Act, appeals from an award of indemnity benefits to respondent by the Workers' Compensation Court. The Workers' Compensation Court awarded respondent indemnity benefits in the amount of $60 a week for 180 weeks for a 90 percent permanent partial disability of his right hand. Following denial of its application for rehearing, the Plan II insurer appeals to this Court.

On June 9, 1975, respondent sustained an injury to his right hand while employed by Trapper Manufacturing Company of Kalispell as a "finish man" in the construction of pickup campers. Respondent's right thumb, index finger and second finger were severed by a table saw while he was apparently trying to free some material that had become jammed in the saw.

The injury was promptly reported, a claim was timely filed, appellant as Trapper's insurer accepted liability, and temporary total benefits were commenced.

Respondent was initially treated by Dr. G. W. Ingham in Kalispell who referred him to Dr. Gerald Olmsted of Spokane. Dr. Olmsted managed to reimplant respondent's thumb after shortening it approximately 1/2 inch. Attempts to save the other two severed fingers failed. Respondent was treated by Drs. Ingham and Olmsted throughout his healing period.

On January 5, 1976, the healing period had ended. By a report dated January 26, 1976, Dr. Olmsted rated respondent's disability as 55 percent as compared to the loss of his entire right hand.

Based on Dr. Olmsted's report, appellant made an offer of $6,600 as a lump sum settlement of respondent's claim. This offer was rejected by respondent.

Respondent later was evaluated by Dr. Ingham at appellant's request. Dr. Ingham rated respondent's disability at 66 percent as compared to the loss of the entire right hand. Based on Dr. Ingham's report, appellant increased its offer of settlement to $7,920. This offer was also rejected by respondent who demanded payment for total loss of the hand.

The medical ratings of Dr. Olmsted and Dr. Ingham are the only ratings contained in the record. At the close of the hearing before the Workers' Compensation Court both parties stipulated to the medical reports contained in the file and that both parties would rely on them.

In the meantime respondent returned to work on July 21, 1976. He did not attempt to return to Trapper Manufacturing because of what he termed "unsafe working conditions". Respondent's first job upon returning to work was as an unskilled laborer. At the date of the Workers' Compensation Court hearing, respondent was working as an unskilled laborer for a plywood manufacturing firm. His hourly wage was $1.07 higher per hour than his wage at Trapper Manufacturing Company at the time of the accident.

Respondent testified that as a result of the accident he has experienced a loss of sensitivity in the reimplanted thumb, and a loss of grip in the entire right hand along with a general loss of manual dexterity. The effect of the accident has been to greatly reduce the number of activities which respondent can perform with his right hand and to reduce the speed at which he can perform other activities. In this regard, he testified that he was still able to use some of the hand tools he used in his job at Trapper Manufacturing Company, but that such use would be at such a slow pace as to be unacceptable to a manufacturing concern.

The sole issue on appeal is the sufficiency of the evidence to support the Workers' Compensation Court award of 180 weeks of compensation for a 90 percent permanent partial disability to respondent's right hand.

The appropriate test to be applied in reviewing Workers' Compensation Court decisions was recently discussed in Skrukrud v. Gallatin Laundry Co., Inc., ____Mont.____, 557 P.2d 278, 280, 33 St. Rep. 1191, 1194 (1976), where we stated:  " * * * workers' court decisions will not be overturned if there is substantial evidence to support its findings and conclusions."

Appellant urges that error was committed in awarding a 90 percent disability where the only medical impairment ratings were 55 and 66 percent disability.  We disagree

Many factors in addition to medical impairment ratings may be properly considered by the court in determining a claimant's disability.  For this reason, impairment ratings do not conclusively establish limits on compensation awards in all cases; rather, such medical impairment ratings by physicians are simply expert opinion evidence constituting but one item of evidence to be considered along with other evidence presented.  Brurud v. Judge Moving & Storage Co., Inc., ____Mont.____, 563 P.2d 558, 34 St. Rep. 260 (1977).

In this case we hold that the Workers' Compensation Court had sufficient evidence to justify an award of 90 percent permanent partial disability on respondent's right hand.  Where, as here, an indemnity award is made under section 92-709, R.C.M. 1947 (the specific injury statute) such award is to compensate for possible loss of earning capacity in the future without regard to present earnings.  McAlear v. Arthur G. McKee & Co., ____Mont. ____, 558 P.2d 1134, 33 St.Rep. 1337 (1976); Jones v. Glacier General Assurance Co., 145 Mont. 326, 400 P.2d 888.  In addition

to the medical impairment ratings by the doctors, the Workers' Compensation Court had before it:  (1) respondent's testimony as to his loss of grip and sensation in his right hand; (2) respondent's work history as a skilled carpenter prior to the accident and the fact that he is now relegated to unskilled labor; and (3) the doctors' reports concerning respondent's specific medical problems including the damage to his hand and the loss of range of motion of his fingers.

The judgment  of the Workers' Compensation Court is affirmed.

_____
                Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 5 -