No. 13526

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

VIRGINIA FLAKE,

Claimant and Appellant,

-vs-

ST. VINCENTS'S HOSPITAL, Employer,

and

AETNA LIFE & CASUALTY COMPANY,

Defendant and Respondent.

Appeal from: Workers' Compensation Court
Honorable William E. Hunt, Judge presiding.

Counsel of Record:

For Appellant:

Kelly and Foley, Billings, Montana
William T. Kelly argued, Billings, Montana

For Respondent:

Anderson, Symmes, Forbes, Peete and Brown,
Billings, Montana
Weymouth D. Symmes argued, Billings, Montana

Submitted: September 20, 1977

Decided: DEC 13 1977

Filed: DEC 13 1977

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a decision of the workers' compensation court, Billings, that claimant sustained a 12% permanent partial disability and awarding a lump sum payment in the amount of $2,431.20.

Virginia Flake, claimant and appellant, is a licensed practical nurse. She suffered an injury to her lower back in the course of her employment at St. Vincent's Hospital in Billings on March 3, 1974. Prior to her injury, she was employed part-time, working an average of three eight hour days per week. The record reveals claimant worked one full forty hour week just prior to her injury.

Following the injury, claimant continued to work until March 30, 1974, when the pain of the injury forced her to discontinue her work. Dr. D. R. Huard performed a laminectomy on claimant in August 1974. The Workers' Compensation Division paid all bills and lost wages during the period of claimant's nonemployment.

On November 18, 1974, claimant resumed work at St. Vincent's. She was unable to do lifting because of the injury. However, she was able to work three to four days per week and has, in fact, worked several forty hour weeks subsequent to the injury. Her wages have increased approximately eighty cents per hour, primarily due to across the board cost of living increases, so she makes somewhat more money now than before the injury.

On August 29, 1974, Dr. Huard submitted a report stating:

"* * * I believe there is a partial permanent impairment. This following result of laminectomy would be 20% of her spine, which converts to 12% of the man as a whole. * * *"

The insurance carrier for St. Vincent's, defendant and respondent Aetna Life & Casualty Company concluded the 12% impairment factor limited its liability under the Workers' Compensation Act to 12% or 60 of the possible 500 weeks of maximum benefit. Multiplying 60 weeks by the weekly compensation rate of $40.52 yielded $2,431.20, which sum was offered to claimant.

Claimant rejected the offer and, on September 4, 1975, sought a determination before the workers' compensation court. During the hearing of November 5, 1975, pursuant to claimant's petition, claimant submitted evidence of her inability to perform certain types of work, such as lifting, as a direct result of her injury. The court, by its findings of fact and conclusions of law dated August 23, 1976, accepted the carrier's computation of $2,431.20, upon a finding of no substantial loss of earning capacity, based upon claimant's work records and the 12% impairment rating. Claimant appeals the court's conclusions.

The issue presented by this appeal is whether the workers' compensation court erred in arriving at a 12% permanent partial disability rating, given the facts of record. We hold it did not.

Claimant contends the court should not have determined disability solely upon the basis of the doctor's medical impairment rating but, rather, that disability should be computed upon a consideration of "loss of earning capacity". In

making such computation, the court should properly evaluate
the disability in view of claimant's age, education, work
experience, pain and disability, actual wage loss, and loss
of future earning ability. Here, claimant's inability to
perform more than three or four days of work should be con-
sidered strong evidence of a loss of earning capacity. In
this regard, claimant submits the Workers' Compensation Act
should be liberally construed in favor of recovery.

Respondent, however, stresses that claimant is presently
working at least as many hours and, in fact, is earning more
after than before the injury, therefore there being no actual
wage loss there is no loss of earning capacity. Claimant sus-
tained a "bodily functional impairment" only, fully compensable
by the settlement offered by respondent insurance carrier. The
court properly based its award on the percentage of such im-
pairment, this being the only substantive evidence of disability.

Claimant's petition for workers' compensation benefits pro-
ceeded under and is governed by the Workers' Compensation Act,
section 92-703.1, R.C.M. 1947. This section provided prior to
amendment in 1975:

> "Compensation for injuries causing partial disability.
> Weekly compensation benefits for injury producing
> partial disability shall be sixty-six and two-thirds
> percent (66 2/3%) of the difference between the wages
> received at the time of the injury and the wages the
> injured employee is capable of earning thereafter, sub-
> ject to a maximum compensation of sixty dollars
> ($60.00) a week.

> "* * *."

Section 92-703.1 "* * * bases the benefit upon actual
loss of earning capacity resulting from the injury * * *."
McAlear v. Arthur G. McKee & Co., ____Mont.____, 558 P.2d 1134,

33 St. Rep. 1337, 1341 (1976). It is manifest from a reading of section 92-703.1 that the test for such loss of earning capacity under the Workers' Compensation Act is "the difference between the wages received at the time of the injury and the wages the injured employee is capable of earning thereafter * * *." Also see: Olson v. Manion's, Inc., 162 Mont. 197, 202, 510 P.2d 6 (1973).

Claimant relies on decisions of this Court adopting the "loss of earning capacity" test. Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 259 P.2d 340 (1953); Lind v. Lind, 142 Mont. 211, 383 P.2d 808 (1963); Graham v. Tree Farmers, Inc., 142 Mont. 483, 385 P.2d 83 (1963). Claimant draws support primarily from the related rule emerging from such cases, that loss of earning power as a result of an injury is not necessarily proportional to bodily functional impairment. It is argued that to equate a percentage bodily functional impairment rating with a percentage disability rating for purposes of compensation under section 92-703.1, is to make wholly arbitrary the concept of "compensable disability".

While we agree a small percentage of bodily functional impairment can result in a substantial loss of earning capacity and a greater compensation award in some cases, the evidence adduced at the hearing in the instant case leads to the opposite conclusion. Claimant was shown to be working at least as many hours after the injury as before. The fact claimant may have worked more hours, earned more pay, or been promoted in her employment had it not been for the injury, is immaterial to a determination of compensable disability especially where,

as here, the record is devoid of evidence in support of such a conclusion. Olson v. Manion's, Inc., supra. The salient fact remains claimant was a part-time employee before and after the injury. To base an original compensation award upon any other criterion would be to do violence to the literal language of section 92-703.1.

Finally, we note the medical report submitted by Dr. Huard was the sole evidence in the record substantiating the percentage of claimant's impairment. We find the workers' compensation court had no alternative, based upon the facts in the record, than to ground the award on the impairment rating in the light of claimant's work records and, in so doing, accepting the settlement figure offered by respondent insurance carrier.

The decision of the workers' compensation court is affirmed.

Justice

We Concur:

Justices.

. . . . . . . . .

Mr. Chief Justice Paul G. Hatfield concurs in the result, but not in all the discussion.

Chief Justice.

- 6 -

Mr. Justice Gene B. Daly dissenting:

I respectfully dissent. This claimant was performing part-time employment before her injury i.e., there was only three or four days a week _available_ to her. Since her operation she is only _able_ to work three or four days a week even though there is more work now available to her. There is no doubt claimant may be earning the same number of dollars or _even_ more but this is not my understanding of the standard to be applied when determining her right to be paid under section 92-703.1 for diminished earning capacity.

The number of dollars earned and hours spent performing her employment create a presumption of earning capacity compatible with her _stated_ disability. This presumption may be rebutted by evidence that shows her post-injury dollars earned and time spent to be an unreliable basis for the determination of earning capacity. Shaffer v. Midland Empire Packing Co., 127 Mont. 211, 213, 259 P.2d 340,342 (1953).

Here, there seems to be a loss of capacity to perform as well as before the injury and a loss of ability to compete and earn in the open labor market. This would bring claimant within section 92-703.1, R.C.M. 1947.

_____
Justice.

Mr. Justice Daniel J. Shea dissenting:

I concur in the above dissent of Mr. Justice Daly.

_____
Justice.

- 7 -