JOHN HEAD, Claimant and Appellant, *v.* L. PETER LARSON, Employer, and MISSOULA SERVICE COMPANY, Defendant and Respondent.

No. 14177.
Submitted Dec. 12, 1978.
Decided March 23, 1979.
592 P.2d 507.

Hedman & Hileman, Whitefish, Donald E. Hedman argued, Whitefish, for claimant and appellant.

Murphy, Robinson, Heckathorn & Phillips, Kalispell, I. James Heckathorn argued, Kalispell, for defendant and respondent.

MR. JUSTICE DALY delivered the opinion of the Court.

This is an appeal from the judgment and decree of the Workers' Compensation Court finding claimant John Head permanently partially disabled and awarding him permanent partial disability benefits in the amount of $60 per week for a period of 125 weeks. From this judgment claimant appeals.

On September 13, 1973, John Head was injured in the course of his employment as a logger for L. Peter Larson. As he was cutting limbs off a fallen tree, he stepped back onto a small log causing him to twist and wrench his back.

Claimant was first treated for his injury by Dr. Bruce McIntyre of Whitefish, Montana, the day after the accident. Dr. McIntyre treated him for a low back strain and said he could not return to work. When claimant's condition failed to improve, Dr. McIntyre sent him to Dr. George Ingham, an orthopedic specialist. After a myelogram had been performed in Missoula, Dr. Ingham confirmed that claimant had "probable herniated nucleus pulposis [sic] L4-5, left."

On February 14, 1974, Dr. Ingham removed by laminectomy a large herniated disc. On August 5, 1974, after Head's condition had failed to improve as expected, Dr. Ingham filed a certificate of condition showing claimant would have permanent partial impairment. Dr. McIntyre, in February 1975, filed a similar certificate indicating claimant was unable to return to work and recommending additional treatment as indicated by Dr. J. T. Laidlaw who had examined claimant on January 13, 1975. Claimant refused to undergo the recommended additional treatment.

On July 31, 1975, claimant was examined by Dr. Alexander C. Johnson at the request of the insurer. Dr. Johnson reported "no clinical evidence of organic neurological disease. There is some evidence of nonorganic overlay." He also reported that the lumbosacral spine films and myelographic spot films taken earlier were all entirely negative.

At the time of his injury, Head was making $5.00 per hour or $200 per week. Since his accident, he has been unable to return to his job as a logger. Except for some limited duty as a sheriff's deputy, he has been unable to find steady employment. He refuses, or expresses a strong distaste for, any vocational rehabilitation to retrain him for less physical indoor work, although he does express an interest in either training as a forestry technician or work as a police officer. Since his accident he has completed his high school education equivalency. Neither he nor his wife are willing to move from Olney, where they own their home, to a larger city where employment possibilities may be better. At the time of the accident claimant was 47 years old.

From the time of the accident until November 1976, the employer's insurer paid claimant, in addition to his actual medical expenses, $110 per week in temporary total disability benefits. From that date permanent partial disability payments in the amount of $60 per week have been paid. Followong Head's refusal of a $4,500 lump sum offer, representing 75 weeks of permanent partial disability payments, the case proceeded to trial.

Three evaluations of Head's disability were received by the Worker's Compensation Court. Both Dr. McIntyre and Dr. Alfred Wallner rated him at 15 percent total disability. Dr. Laidlaw, an orthopedic specialist, gave him a 33 percent permanent partial disability. At trial it was brought out that Head was receiving 50 percent disability from the Veteran's Administration for injuries to his face and hearing received in Korea. Also included in the findings is mention of an incident where Head, after his back surgery, attempted to get on his motorcycle and either had the motorcycle fall on him (Workers' Compensation Court's version) or had his knee

give out causing him to fall and hurt his back (claimant's version). In either event, claimant was hospitalized in traction for a week or so after this incident.

From these facts the Workers' Compensation Court concluded in pertinent part:

"3. That the evidence, both medical and nonmedical, indicates that the claimant is disabled and that his Korean War experience, his industrial accident, and his motorcycle all contributed to his disability.

"4. That his medical impairment has been evaluated by three doctors who gave impairment ratings of 15%, 15% and 33%. From all the evidence this Court concludes that claimant has a permanent partial disability and that 25% of his disability is attributed to the industrial accident he suffered on September 13, 1973.

"...

"8. That from the foregoing, this Court finds that claimant is entitled to benefits of 125 weeks at $60.00 per week from November 5, 1976, and that the defendant, after deducting the amount paid from November 5, 1976, shall offer the claimant the balance due in a lump sum. If the claimant refuses to accept this offer, the defendant shall pay out the balance due at the present biweekly payment of $120.00. Section 92-615, R.C.M.1947."

The following issues are presented to this Court for review:

1. Did the Workers' Compensation Court improperly consider claimant's preexisting war injuries and the motorcycle incident in determining that claimant was entitled to only 125 weeks of permanent partial disability benefits?

2. Whether a finding of permanent partial disability *per se* entitles a claimant to 500 weeks of compensation?

3. Whether sufficient evidence exists to support the finding that claimant was 25 percent disabled?

■ Claimant's first issue on appeal is that the Workers' Compensation Court improperly limited his compensation benefits because he suffered from a preexisting disability as a result of a

Korean War wound. There is, however, no evidence in the record to support the contention that either the examining doctors or the Workers' Compensation Court considered claimant's preexisting condition at all in evaluating the degree of his impairment from the industrial accident. Nor should they have considered it.

Claimant's Korean War injury resulted in a hearing loss and some facial paralysis. For these disabilities claimant was receiving 50 percent disability benefits from the Veteran's Administration, even though the disabilities did not interfere with his earning ability. His industrial accident, however, resulted in injury to his lower back and did not affect his prior disability at all.

This is not a case of an industrial accident aggravating and accelerating a preexisting disability or disease as in *Rumsey v. Cardinal Petroleum* (1975), 166 Mont. 17, 530 P.2d 433, or *Gaffney v. Industrial Accident Board* (1955), 129 Mont. 394, 287 P.2d 256. Neither of claimant's injuries aggravated nor accelerated the other. The impairment ratings submitted to the court dealt only with claimant's disability resulting from the injury to his lower back. The preexisting war-related disabilities were properly not considered. *Viets v. Sweet Grass County* (1978), 178 Mont. 337, 583 P.2d 1070, 1072.

At the time of the proceedings before the Workers' Compensation Court, claimant suffered from two separate, distinct and unrelated disabilities: (1) the war-related hearing loss and facial paralysis, and (2) the industrial accident related back injury. Only the latter disability is compensable by workers' compensation.

The Workers' Compensation Court concluded "that 25% of his disability is attributable to the industrial accident he suffered." It is clear that the lower court concluded that, of claimant's various injuries and disabilities, the industrial accident by itself caused him to be 25 percent disabled. Therefore only this 25 percent disability was compensable by workers' compensation.

 To support its conclusion, the lower court relied in part on medical impairment ratings from three doctors that rated claimant's disability at 15 percent, 15 percent, and 33 percent perma-

nent partial disability. It appears that essentially the Workers' Compensation Court averaged the three ratings, but gave some extra weight to the 33 percent rating, perhaps because it was given by an orthopedic specialist. This evidence, along with the remaining reports and testimony in the record, clearly supports the award of 25 percent disability. As we have stated numerous times:

"Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision. (Citations omitted.)" *Steffes v. 93 Leasing Co., Inc.* (1978), 177 Mont. 83, 580 P.2d 450, 452-53.

This disposes of claimant's first and third issues.

Claimant's second issue concerns the application of the 25 percent disability rating to the amount of claimant's compensation. The Workers' Compensation Court, concluding the claimant was one-forth permanent partially disabled, awarded him permanent partial disability benefits for one-fourth of the statutory maximum 500 weeks for such benefits. Section 92-703.1, R.C.M.1947, now section 39-71-703 MCA. Claimant argues that this is error and that, as he is *permanently* partially disabled, he is entitled to receive benefits for the entire 500 weeks provided in the statute. We disagree.

Under claimant's argument, all permanent partial disabilities, regardless of degree of impairment, would entitle the injured worker to the full 500 week period of compensation. Yet the legislature has declared otherwise. For example, a worker who loses a leg at the hip so as to preclude use of an artificial limb, surely permanent disability under anyone's definition, is entitled only to 300 weeks of compensation even though the disability extends beyond that date. Section 92-709, R.C.M.1947, now section 39-71-705 MCA. This limit applies regardless of whether such a claimant continues

to suffer continued loss of earning capacity. Section 92-703.1(2), R.C.M.1947, now section 39-71-703(2) MCA.

Although claimant's back injury is not listed in the schedule of specific injuries in section 92-709, the following language found after the schedule is applicable:

*"In all other cases of permanent injury, less than total, not included in the above schedule, the compensation for partial disability shall bear such relation* to the periods stated in the above schedule *as the disabilities bear to those* produced by the injuries named in the schedule or to *partial disability (500 weeks)."* (Emphasis added.)

By this language the legislature intended that for lesser degrees of partial disability shorter periods of compensation should be awarded. Here the Workers' Compensation Court concluded claimant was 25 percent permanently partially disabled, a conclusion we find supported by the evidence. Claimant therefore became entitled to one-fourth of the statutory maximum of 500 weeks of compensation. We have approved, at least by implication, this method of calculating the proper award numerous times. See, e. g., *Fermo v. Superline Products* (1978), 174 Mont. 245, 574 P.2d 251, 252; *Flake v. Aetna Life and Cas. Co.* (1977), 175 Mont. 127, 572 P.2d 907, 908-09; *Flansburg v. Pack River Co.* (1977), 172 Mont. 163, 561 P.2d 1329, 1331. See also, *Walker v. H. F. Johnson, Inc.* (1978), 180 Mont. 405, 591 P.2d 181, where, upon denial of rehearing, we discussed the relationship of section 92-703.1 and 92-709 in determining duration of compensation under section 92-703.1 for injuries not enumerated in section 92-709.

The judgment of the Workers' Compensation Court is affirmed.

MR. CHIEF JUSTICE HASWELL, and JUSTICES HARRISON, SHEA and SHEEHY concur.