No. 84-354

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

JOHN A. DAVIS (FATAL) VIVIAN
MARIE DAVIS,

Claimant and Respondent,

-vs-

GEORGE W. JONES, Employer,

and

MOUNTAIN WEST FARM BUREAU MUTUAL
INSURANCE COMPANY,

Defendant and Appellant.

APPEAL FROM: Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Utick, Grosfield & Uda; Andrew J. Utick, Helena,
Montana

For Respondent:

Joseph E. Engel, III, Great Falls, Montana

Submitted on Briefs: March 28, 1985

Decided: June 13, 1985

Filed: JUN 13 1985

Ethel M. Harrison

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Defendant Mountain West appeals from an order of the Workers' Compensation Court finding employer and insurer liable to claimant for benefits under the Workers' Compensation Act.

This is a continuation of a case that has previously been before this Court. In Davis v. Jones (Mont. 1983), 661 P.2d 859, 40 St.Rep. 570, we held that the employer, Jones, was estopped from asserting the statute of limitations to bar claimant's request for compensation. The present action is an appeal from the Workers' Compensation Court's determination that Davis' fatal heart attack was a compensable injury.

Testimony indicated the following facts: On February 16, 1980, John Davis was working as a ranch hand. One of his duties was to chop through the ice covering cattle watering holes so that the cattle could drink. To do this, he used a dull ax to break the ice and a shovel or pitchfork to remove the broken ice from the hole. He would have to chop a hole through the ice two feet wide and ten feet long. This activity usually led to Davis getting wet from the knees down, and otherwise was very strenuous work. On the date in question, the air temperature was somewhere between -10 and +20 degrees Fahrenheit, with a wind chill down to -31 degrees.

Prior to 10:30 a.m. on February 16, Davis had already chopped one watering hole. Sometime during that morning he began to experience a sensation like a brick on his chest while chopping ice to make the second watering hole. One

time he passed out on the ice and when regaining consciousness felt very cold. At approximately 10:30 a.m., after Davis regained consciousness, the employer and a co-employee, Louis Velasco, found him sitting or kneeling on the ice and leaning against the handle of his ax he used to chop through the ice. The employer spoke with employee Davis who complained of chest pain and said that he did not feel well. The employer suggested that he leave work and see a doctor.

Shortly thereafter, Davis left the water hole and proceeded to his vehicle. He continued to experience chest pain, although less severe than originally experienced. Between approximately noon and 1:00 p.m., he was sitting in his vehicle and continuing to experience moderate chest pain. He declined to help a co-employee. Davis told another co-employee that he was going to see a doctor and that he felt sick, as though he had the flu.

At approximately 1:00 p.m. that day, Davis arrived at the home of Judy and Ralph Paddock. While standing in the front yard, he complained to Judy Paddock about having felt like there was a brick on his chest while chopping ice, passing out, and feeling very cold when regaining consciousness. He complained of still being cold, of chest pain, and repeatedly said he wanted to call Dr. Sidensticker. Other complaints were of numbness in his hands and aching in his arms; and while he did so he rotated his shoulders and arms. To Judy Paddock, he appeared pale, cold and "shook-up." In the Paddock house, Davis told Ralph Paddock that he had passed out while chopping ice that morning and that right then he felt cold and had a chest pain. Ralph

3

Paddock testified that Davis appeared upset, nervous and scared.

Davis left the Paddocks' house at approximately 4:30 p.m. While driving home he almost blacked-out three times and had to stop his vehicle on each occasion. When he arrived home about 7:30 or 8:00 p.m., he immediately asked his wife, the claimant, for something cold to drink, complaining about having been thirsty all day and about not having been able to get enough cold fluids to drink. He then sat down and drank approximately a gallon of ice tea. He looked tired, gray and was shaking. He told his wife that while chopping ice during the morning he had passed out after experiencing chest pain. He also complained of having "hard chest pains on and off all day." A little bit later while sitting at the dinner table, Davis complained of chest pains and numbness in one arm. He did not finish dinner. He asked for something cold to eat and then ate two bowls of ice cream. His wife ran a tub of hot water so that he could take his usual bath, but he said that he was too tired, and that he would rather lie down. He then got up from the dinner table and went into the bedroom. Soon after Davis left the kitchen and while his wife was removing the dinner dishes she heard him moaning in the bedroom. She entered the bedroom and saw that he had vomited. He was rolling on the bed holding his chest and moaning, acting as though he was unable to get enough air.

Vivian Davis, the claimant, got her husband into the family car and then drove to a nearby gasoline service station. As they pulled up to the gas station, John Davis grabbed his chest and starting gasping for breath and

4

rocking. The claimant attempted to clear his throat. He suddenly quit breathing. She gave him artificial respiration and revived him temporarily. His heart attack continued, and several minutes later he sighed deeply and died.

The Workers' Compensation Court found that the decedent died of a heart attack. It also found that his heart attack began while he was chopping ice to make a second watering hole on the morning of February 16, 1980 and continued throughout the day and ended with his death that evening. On those findings, the Workers' Compensation Court held that employer and insurer were liable for claimant's benefits under the Workers' Compensation Act. Appellant, Mountain West Farm Bureau, presents the following issues for review:

(1) Whether there was a causal relationship between John Davis' myocardial infarction and resulting death and his work activities.

(2) Whether, even assuming there was a causal relationship between John Davis' myocardial infarction and his work activities, such myocardial infarction is a compensable injury under the Montana Workers' Compensation Act.

The Workers' Compensation Court held that the decedent died from a myocardial infarction and that this injury was sufficiently work related so as to bring it within the ambit of the Workers' Compensation Act. In challenging this determination, the appellant raises inconsistencies and weaknesses in claimant's case, alleging an insufficient causal relationship between claimant's work activities and the heart attack. In considering such an argument, we have firmly adhered to the view that where the findings are based

5

on conflicting evidence, this Court's function on review is confined to determining whether there is substantial evidence to support the findings, and not to determine whether there is sufficient evidence to support contrary findings. Little v. Structural Systems (1980), 188 Mont. 482, 614 P.2d 516; Jensen v. Zook Brothers Construction Company (1978), 178 Mont. 59, 582 P.2d 1191; see also Jones v. St. Regis Paper Company (1981), 196 Mont. 138, 639 P.2d 1140.

We find that the Workers' Compensation Court's order was based on substantial credible evidence in the record. In a well-reasoned and comprehensive opinion, the Workers' Compensation Court addressed many factors that went into its decision. The claimant herself was found to be a very credible witness. The claimant's hypothetical question presented to each party's expert was found to be accurate. The claimant's medical expert was found to be more qualified and his opinion was accorded greater weight. Finally, the nature of decedent's work and the particular activity he was engaged in at the time the initial heart attack occurred lends support to the Workers' Compensation Court's order. Given the presumption of correctness that accompanies the Workers' Compensation Court's findings when they reach this Court, we will not overrule this order, Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 546 P.2d 1055; Hurlbut v. Vollstedt Kerr Company (1975), 167 Mont. 303, 308, 538 P.2d 344, 346; Hunt and Luinstra, "The Montana Workers' Compensation Court" 41 Mont.L.Rev. 1, 18, (1980).

As to the second issue, we have in the past held that in certain cases heart attacks are compensable injuries under Montana Workers' Compensation Act. See, Rathbun v. Taber

6

Tank Lines, Inc. (1955), 129 Mont. 121, 283 P.2d 966, (compensation allowed); Dumont v. Wickens Bros. Constr. Company (1979), 183 Mont. 190, 598 P.2d 1107; Hurlbut v. Vollstedt Kerr Company, supra; Ness v. Diamond Asphalt Company (1964), 143 Mont. 560, 393 P.2d 43, (compensation denied). See also Grosfield, Montana Workers' Compensation Manual §3.40 (1979). The question of whether an employee suffered a job related "tangiable happening of a traumatic nature from an unexpected cause or unusual strain resulting in . . . harm," section 39-71-119, MCA, is one of fact. In that regard the court must "rely on credible medical evidence to determine" whether the injury is compensable, Jones v. Bair's Cafe (1968), 152 Mont. 13, 19, 445 P.2d 923, 926, see also Dumont v. Wickens Bros. Constr. Company, supra, at 205, 206, 598 P.2d at 1107.

The lower court in this case noted that "in the instant case, the decedent was performing strenuous physical labor and . . . the medical evidence proved it caused his heart attack." The Hurlbut case, supra, upon which appellant relies is distinguishable in the fact that this Court, quoting the medical witness, noted that he could not state what was the cause of Mr. Hurlbut's heart attack and held: "Claimant failed to carry his burden and therefore cannot qualify under the statute for benefits." In accord are Dumont, supra Hurlbut, supra, Ness, supra, and Rathbun, supra.

Again, we are presented with the question of whether there is substantial evidence on the record to support the Workers' Compensation Court's determination that the decedent's heart attack was caused by his work. Experts

7

testified on behalf of each side. Each elaborated upon the cause of decedent's heart attack. The court heard this testimony, and held that the claimant had established by a preponderance of the credible medical evidence that decedent's heart attack was work related. We find there is substantial evidence in the record and the court's order is, therefore, affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

8