No. 88-303

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

DONALD J. HARTMAN,

        Claimant and Respondent,

    -vs-

STALEY CONTINENTAL, Employer,
      and
NATIONAL UNION FIRE INSURANCE,

        Defendant and Appellant.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Marra, Wenz, Johnson & Hopkins; Gary L. Green, Great
        Falls, Montana

    For Respondent:

        Erik B. Thueson, Helena, Montana

---

Submitted on Briefs: Nov. 3, 1988

Decided: February 16, 1989

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Staley Continental and National Union Fire Insurance appeal the decision of the Workers' Compensation Court, awarding Donald J. Hartman, the claimant, $36,625.00 in permanent partial disability benefits, $13,690.60 in attorney fees and $1,915.29 in costs. We affirm and remand this case to assess reasonable attorney fees and costs in connection with this appeal and in accordance with § 39-71-611, MCA (1985).

The two issues raised on appeal are:

(1) Whether substantial, credible evidence supports the Workers' Compensation Court's award to the claimant of $36,625.00;

(2) Whether the Workers' Compensation Court erred in awarding the claimant $13,690.60 in attorney fees and $1,915.29 in costs.

Staley Continental, a company that sells food, paper products and other supplies to restaurants, hospitals and nursing homes, hired Donald J. Hartman, the claimant, in 1980 as a sales representative. Hartman's responsibilities for Staley Continental include developing and servicing new accounts in the Hi-Line area. Hartman drives over 750 miles a week in the course of his employment and works 12 to 15 hours a day, four days a week. Half of his time is spent driving and seeing his clients and the other half is spent doing the necessary paper and computer work to ensure that the clients receive their orders.

Hartman's starting salary with Staley Continental in 1980 was approximately $1,100 per month. His income has gradually increased, and in 1987 he made approximately $68,000 plus substantial fringe benefits. Hartman

contributes the majority of his success to the Hi-Line area, stating that the area is sparsely populated and generally ignored by food service industry people and therefore he is not faced with competition. He also contributes his success to his relationship with his customers which he has developed over many years.

On September 22, 1980, while performing his duties for Staley Continental, Hartman was involved in an automobile accident. This accident resulted in lasting, but not disabling injuries. As a result of the 1980 accident, Hartman suffered injuries to his lower back and neck, but Hartman testified that the accident caused no problems "whatsoever" in his job performance for Staley Continental. Hartman filed a workers' compensation claim for this accident. This claim has been settled and is not at issue in this appeal.

On October 28, 1985, Hartman was involved in a second automobile accident within the course and scope of his employment. This accident exacerbated Hartman's previous existing neck injury. A physician, Dr. Swift, examined Hartman after the 1985 accident and found that Hartman sustained a musculoligamentous sprain to his neck. As a result of this 1985 accident, Hartman claims that he is entitled, under §§ 39-71-705 through -708, MCA (1985), to 500 weeks of permanent partial disability.

On May 10, 1988, the Worker's Compensation Court issued its findings of fact and conclusions of law and concluded that Hartman was entitled to 250 weeks of permanent partial disability benefits at a rate of $146.50 per week, beginning on the date of injury. The court also concluded that Hartman was entitled to an award of reasonable costs and attorney fees pursuant to § 39-71-611, MCA (1985). On May 24, 1988, the court concluded that Hartman was entitled to reasonable

attorney fees of $13,690.60 and $1,915.29 in costs. National Union Fire Insurance, the defendant, appeals.

The first issue raised on appeal is whether substantial, credible evidence supports the Workers' Compensation Court's award to Hartman of $36,625.00.

The court's findings, which are clearly set forth in the record, are based upon testimonies from Hartman, Dr. Swift, and two vocational rehabilitative counselors. At the October 13, 1987 proceedings, Hartman testified that as a result of the 1985 accident the pain in his neck has increased; his daily work schedule exacerbates his neck injury; his driving has been hampered to the point that it has become dangerous for him to drive at times; and he has practically given up his hobbies and recreational activities because of the pain that such activities cause. In an attempt to alleviate his neck condition, Hartman testified that he has taken several different medications, undergone cervical traction and chiropractic manipulations, and has gone weekly, when allowed by his work schedule, to a physical therapist.

None of the above treatments have been successful for Hartman in providing permanent relief for his neck condition. The physical therapist stated, in a letter to Dr. Swift, that "[p]rogress has been slow and variable, and it appears to be related to his work and the inconsistency of his therapy attendance which is because of his work schedule as well." Dr. Swift testified that, based on a reasonable degree of medical certainty, Hartman has one of three options if he is to get some relief: (1) quit his present job and take on new employment that might not exacerbate his condition; (2) cut down on the number of hours that he works and the physical driving distances that he is presently required to do; or (3) transfer to some other job within his current company that would not require driving. Hartman testified that as a

result of the detrimental emotional and physical consequences he suffers from the 1985 accident, he is not going to continue working at his present job. He also testified that the reason he has continued working after this accident, despite his injuries, is because of his financial obligations and because he did not become half-vested in his company's profit-sharing and retirement programs until May 20, 1988. In light of the above, the court found that Hartman cannot emotionally or physically continue with his present employment much longer.

The Workers' Compensation Court appropriately applied the law in effect at the time of Hartman's accident. Trusty v. Consolidated Freightways (1984), 210 Mont. 148, 151, 681 P.2d 1085, 1087. The court then determined, based upon the information above, that Hartman was entitled to an award of permanent partial disability benefits pursuant to §§ 39-71-705 through -708, MCA (1985). The court first noted that permanent partial disability is defined in § 39-71-116(12) as:

> a condition resulting from injury as defined in this chapter that results in the actual loss of earnings or earning capability less than total that exists after the injured worker is as far restored as the permanent character of the injuries will permit. Disability shall be supported by a preponderance of medical evidence.

The court then noted that in Montana a partially disabled claimant, injured prior to the enactment of the 1987 amendments, may elect benefits under either § 39-71-703, MCA, to recover actual loss of earning capacity, or §§ 39-71-705 through -708, MCA, which purportedly indemnifies a claimant for possible loss of future earning capacity, regardless of whether an actual loss in earning capacity is demonstrable. McDanold v. B.N. Transport, Inc. (1984), 208 Mont. 470,

476-77, 679 P.2d 1188, 1191. The court recognized that in this case Hartman proceeded under §§ 39-71-705 through -708, MCA.

The specific statute pertaining to Hartman's type of permanent partial injury is § 39-71-706, MCA (1985). This statute provides in pertinent part that

> [i]n all other cases of permanent injury less than total not included in the schedule provided for in 39-71-705, the compensation for partial disability shall bear such relation to the periods stated in the schedule provided for in 39-71-705 as the disabilities bear to those produced by the injuries named in the schedule or to partial disability (500 weeks).

The court recognized that the maximum allowable entitlement that a claimant could receive under this section for an injury occurring on October 28, 1985 is $146.50 per week for 500 weeks which would total $73,250.

In determining the degree to which Hartman's earning capacity has been impaired, the court appropriately considered Hartman's age, education, work experience, pain and disability, actual wage loss and possible loss of future earning capacity. Holton v. F.H. Stoltze Land and Lumber Co. (1981), 195 Mont. 263, 266, 637 P.2d 10, 12; Flake v. Aetna Life & Casualty Co. (1977), 175 Mont. 127, 129, 572 P.2d 907, 909. The court recognized that at the time of the trial, Hartman was 39 years of age and had been a traveling salesman since 1979 and continues to work in that capacity. The court also recognized that he has a high school diploma and two years of college.

The court then recognized that Hartman's 1987 salary recorded on his W-2 form was $68,000 plus. The court relied upon the testimonies of the two rehabilitative vocational counselors--Mark Williams, who was called by Hartman, and

Jeanne Dussault, who was called by National Union Fire Insurance--to determine Hartman's possible loss of future earning capacity. Dussault testified that one business she contacted expressed a possible interest in hiring Hartman and that one salesman for that company had made in excess of $100,000 a year. Hartman was subsequently called as a rebuttal witness and testified that he was familiar with the company referenced to by Dussault and that in his opinion, it would be an "absolute impossibility" for a sales representative to make over $100,000 for that company. In addition, Dussault testified on cross-exam that she has never placed an injured worker, with or without a college degree, in a position that pays over $60,000 a year. Dussault also testified that a management level position with Hartman's current employer, a possible alternative to Hartman's current position, has a base salary of $36,000 a year plus benefits or $45,000 a year if fringe benefits are included. Williams conducted an employers' survey, and based upon the responses, he testified that the average salesman earned approximately $25,000 to $26,000 per year and that in a best case scenario this figure would equal $38,000. In light of the above, the court found that Hartman will likely take a fifty percent reduction in his current income upon leaving his present position.

When reviewing a decision by the Workers' Compensation Court, this Court's function is to determine whether substantial evidence exists to support the Workers' Compensation Court's findings of fact and conclusions of law. Coles v. Seven Eleven Stores (Mont. 1985), 704 P.2d 1048, 1050, 42 St.Rep. 1238, 1240, Davis v. Jones (Mont. 1985), 701 P.2d 351, 353, 42 St.Rep. 840, 843. In this case, the court found that although Hartman returned to work immediately after the 1985 accident and has not presently sustained

actual loss of wages as a result of his injuries, he has nonetheless suffered pain and difficulties in his employment because of the accident. The court also found that Dr. Swift's testimony and Hartman's own testimony indicates that Hartman will have to make a change in his employment if he ever expects to be relieved of some of his pain and symptoms. Upon leaving his present position, the court found that Hartman will likely take a fifty percent reduction in his current income. The court then concluded that fifty percent was an appropriate disability factor on which to base Hartman's benefits for possible loss of earning capacity. In applying this figure, the court awarded Hartman 250 weeks of permanent partial disability benefits at a weekly rate of $146.50, beginning from the date of Hartman's 1985 accident. In view of the Workers' Compensation Court's findings of fact and conclusions of law, we hold that substantial credible evidence supports the Workers' Compensation Court's determination of Hartman's permanent partial disability benefits.

The defendant, in an attempt to attack the basis of the court's findings, argues that the court "erroneously relied" on the deposition testimony from Hartman's two expert witnesses and then "misunderstood" oral testimony from its expert witness. We disagree. This Court is in as good a position as the Workers' Compensation Court to assess the weight given to deposition testimony, Shupert v. Anaconda Aluminum Co. (Mont. 1985), 696 P.2d 436, 439, 42 St.Rep. 277, 281-82, but this Court will defer to the Workers' Compensation Court's findings as to the weight and credibility of oral testimony. Frost v. Anaconda Co. (Mont. 1985), 701 P.2d 987, 988, 42 St.Rep. 889, 891. In light of the evidence presented at the trial and discussed above, we hold that the Workers' Compensation Court did not erroneously

rely on the deposition testimonies of Hartman's two expert witnesses--Dr. Swift and Mark Williams, the rehabilitative vocational counselor,--nor did the court misunderstand the defendant's expert witness's oral testimony. We conclude that the court properly considered and weighed all of the testimonies in determining Hartman's permanent partial disability benefits.

The defendant also argues that substantial credible evidence presented at the trial supports its contentions that Hartman's salary will not decrease as a result of his 1985 accident. However, as previously stated, this Court's function on review is to determine whether substantial credible evidence supports the lower court, and not, as the defendant argues, to determine whether substantial credible evidence exists to support contrary findings. Davis, 701 P.2d at 353, 42 St.Rep. at 843.

The second issue raised on appeal is whether the Workers' Compensation Court erred in awarding Hartman $13,690.60 in attorney fees and $1,915.29 in costs.

On June 8, 1988, the Workers' Compensation Court issued an order awarding Hartman $13,690.60 in attorney fees and $1,915.29 in costs. In determining these amounts, the court relied upon § 39-71-611, MCA (1985), the law in effect at the time of Hartman's accident.

In asserting that the Workers' Compensation Court erred in awarding Hartman attorney fees, the defendant sets forth a series of novel "arguments." The defendant recognizes that successful claimants are entitled to attorney fees but argues that Hartman was not a "successful" claimant. Specifically, the defendant argues that Hartman was not successful because Hartman contended he was entitled to $73,250.00 and the court awarded him only $36,625.00. The defendant further "supports" this "argument" by stating that its initial $5,000

- 9 -

settlement offer more closely approximated the court's award of $36,625.00 than Hartman's request of $73,250.00, and therefore indicates that Hartman was not successful.

We hold that defendant's argument set forth above lacks merit. The statute applied by the Workers' Compensation Court, § 39-71-611, MCA (1985), merely states that a claimant who is "adjudged compensable by the workers' compensation judge or on appeal" is entitled to reasonable costs and attorney fees. In the present case, the Workers' Compensation Court found that Hartman was entitled to compensation under § 39-71-706, MCA (1985), and therefore entitled to reasonable attorney fees and costs. In Wight v. Hughes Livestock Co. (1983), 204 Mont. 98, 664 P.2d 303, this Court stated that the "objective of the statutes allowing attorney fees in compensation cases [is] to preserve in tact the eventual award recovered by the claimant for his impairment, by assessing in addition his attorney fees and costs against the insurer or employer." 204 Mont. at 108, 664 P.2d at 309. By engaging in subjective evaluations of whether a claimant, who was awarded benefits by the Workers' Compensation Court, is "successful" according to defendant's definition would go against the objective of preserving the eventual award the claimant recovers, regardless of the actual amount recovered. We therefore disagree with defendant's definition of "successful" and hold that the plain meaning of § 39-71-611, MCA (1985), clearly allows a claimant, who is "adjudged compensable by the workers' compensation judge or on appeal," to recover reasonable costs and attorney fees.

The defendant next argues that the Workers' Compensation Court incorrectly applied § 39-71-611, MCA (1985), when assessing Hartman's attorney fees and costs. Section 39-71-611, MCA (1985), applies when an insurer denies

liability. The defendant argues that the appropriate statute in this case is § 39-71-612, MCA (1985), which applies when an insurer acknowledges liability but disputes the amount of compensation due the claimant. The defendant thus argues that they did not deny liability, but merely disputed the amount of compensation sought by Hartman and therefore the applicable statute in this case to determine attorney fees and costs is § 39-71-612, MCA (1985). The record does not support the defendant's factual assertions. In both the pretrial order and the defendant's proposed conclusions of law, the defendant asserts that the claimant is not entitled to any compensation. In addition, the defendant fails to argue how the application of § 39-71-612, MCA (1985), would cause a different assessment of attorney fees and costs in this case. We therefore hold that the Workers' Compensation Court properly applied § 39-71-611, MCA (1985), in assessing Hartman's attorney fees and costs.

The defendant also argues that the court should have used the contingency fee agreement between Hartman and his attorney to assess the attorney fees. In assessing the amount of reasonable attorney fees and costs, the court relied upon § 39-71-614, MCA (1985). This statute does not state that a contingency fee agreement between a claimant and the attorney limits a court's determination of the amount of reasonable attorney fees awarded to a claimant. To the contrary, the statute requires that the attorney's fee "must be based exclusively on the time spent by the attorney in representing the claimant on the issues brought before the workers' compensation judge." Although the statute does not restrict the claimant and the attorney from entering into a contingency fee arrangement, the statute also does not tie a judge's hand by stating that a contingency fee agreement

determines the upper limit of what constitutes reasonable attorney fees in a workers' compensation case.

The defendant also relies upon McKinley v. American Dental Manufacturing Co. (Mont. 1988), 754 P.2d 831, 45 St.Rep. 892, to assert that a court must pay attorney fees based upon the difference between a settlement offer and the amount awarded by the court. The reliance by the defendant on McKinley is misplaced. In McKinley, this Court interpreted language in § 39-71-612, MCA (1983), that the legislature subsequently repealed in 1985. Hartman's accident occurred in 1985, therefore, the 1985 amendments apply in this case. We therefore hold that the Workers' Compensation Court properly assessed the attorney fees and costs awarded to Hartman.

We affirm and remand this case, pursuant to Hartman's request and in accordance with § 39-71-611, MCA, to the Workers' Compensation Court to award attorney fees and costs associated with this appeal.

_____
Justice

We Concur:


_____
Chief Justice


_____


_____


_____
Justices

- 12 -

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

In my opinion, the permanent partial benefit award of $146.50 per week for 250 weeks is, at best, premature, and is based on a flawed computation methodology.

The record discloses that the claimant was injured on October 28, 1985, when he lost control of his car, received emergency medical treatment consisting of a muscle relaxant and a pain medication, was released from the hospital the same date, returned to work the following day, has had no wage loss, and has increased his gross wage income each year from $56,318.30 in 1985 to $68,000 in 1987.

The Workers' Compensation Court Judge, in his Findings and Conclusions of Law, included the following:

> The Court finds that the medical testimony and credible vocational evidence indicates that Mr. Hartman has a <u>potential</u> loss of future earning capacity. . .
>
> . . .
>
> This testimony clearly indicates that claimant is going to have to make a change in his employment if he ever expects to be relieved of some of his pain and symptoms.
>
> The question, then, is: Can claimant make a change in his employment without experiencing a decline in his income? . . .
>
> . . .
>
> Given the above facts, this Court finds that <u>should</u> claimant leave his current employment, it is likely that it would be for a position paying $36,000.00 a year, or approximately 50 percent of

13

his 1987 income of $68,000.00. Furthermore, this Court holds that fifty percent is an appropriate disability factor on which to base claimant's benefits for potential loss of earning capacity. In applying this figure, claimant is entitled to 250 weeks of permanent partial disability benefits at a weekly rate of $146.50. These benefits are to be paid from the date of claimant's industrial accident. (Emphasis added)

. . .

In my opinion, based on the deposition testimony, uncontroverted facts and pertinent statutes, the above quoted excerpts from the Findings and Conclusions are not legally supportable.

The medical record, in deposition form, is replete with references to the failure of the claimant to comply with the medically recommended exercise regime, which was based upon the knowledge that claimant would be driving long distances and working long hours during his four day work week. Testimony at trial indicated that claimant had six to eight weeks of paid sick leave available to him which he did not utilize for physical therapy purposes. Further, evidence disclosed that claimant took extended vacations to Seattle, Washington and Edmonton, Canada by motor vehicle when less strenuous activity might have aided his recovery. I find erroneous the court's conclusion that "Claimant is going to have to make a change in his employment if he ever expects to be relieved of some of his pain and symptoms."

Regarding the possible change of jobs in the future, the claimant stated: "I'm just trying to delay it until my very expensive teenagers get out of the home, and then I'm going to do something else."

14

The claimant having remained on the job for the past three years, with increased earnings each year, and with the possibility of the claimant remaining in that same position for the next several years, it could only be through conjecture and speculation that the court found a fifty percent disability factor "on which to base claimant's benefits for potential loss of earning capacity."

It is therefore my opinion that the award is premature and, as the court correctly stated: "Should claimant experience an actual diminution of his income for which he has not been compensated, he may withdraw his Section 705 election in favor of Section 703, for loss of actual wages."

_____
Justice

Mr. Chief Justice J. A. Turnage:

I concur in the foregoing dissent of Mr. Justice Gulbrandson.

_____
Chief Justice

15