No. 91-008

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

HARRY A. NESS,

       Petitioner and Appellant,

  v.

ANACONDA MINERALS COMPANY,
a division of ATLANTIC
RICHFIELD COMPANY, INC.,

       Employer/Defendant and
       Respondent.

APPEAL FROM:   The Workers' Compensation Court,
             The Honorable Timothy W. Reardon, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          R. Lewis Brown, Jr., Butte Legal Center,
          Butte, Montana

       For Respondent:

          Andrew J. Utick, Utick & Grosfield,
          Helena, Montana

**FILED**

MAR 24 1993

Filed:

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  September 24, 1991

Decided:  March 24, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Claimant Harry A. Ness filed a petition in the Workers' Compensation Court claiming a right to total permanent disability benefits from the date of his injury on October 14, 1981. Those benefits had been terminated and partial disability benefits commenced on December 8, 1982. Claimant's case went to trial before a hearing examiner of the Workers' Compensation Court on September 5, 1989, and the court's findings of fact, conclusions of law, and judgment were entered on August 25, 1990. The trial court concluded that claimant was not totally disabled and the extent of his partial disability was not an issue in that proceeding. From that judgment, and the trial court's order denying claimant's petition for a new trial, the claimant appeals. We reverse the judgment of the Workers' Compensation Court.

The issues are:

1. Was there substantial, credible evidence to support the decision of the Workers' Compensation Court?

2. Did the Workers' Compensation Court err when it denied claimant's request for attorney fees and costs?

Claimant was born on February 21, 1929, and was 60 years old at the time of his trial in the Workers' Compensation Court. He had 12 years of formal education. His only specialized training related to the job of welding.

Claimant testified that all of his work experience had involved heavy labor. Other evidence indicated that past jobs

2

included stocking shelves, janitorial work, fire fighting, trail work, and hod carrying. From 1965 until the date of his injury on October 14, 1981, he worked as a boiler maker for the defendant.

On the date of the accident which gave rise to his claim for disability benefits, claimant was working for his employer welding and repairing heavy-duty equipment. At the time of his accident, he was burning a center bolt off of a belly pan which was attached to the frame of a D-8 Caterpillar. When he completed the cut, the belly pan, which weighed from 1000 to 1200 pounds, fell on top of the claimant. As a result of that incident, he sustained various injuries, including severe compression fractures of his twelfth thoracic vertebra and his first lumbar vertebra. At the time of his accident, claimant was 52 years old.

Following his accident, claimant was taken to the Veterans Administration Hospital at Fort Harrison where he was examined and treated by James P. Murphy, an orthopedic surgeon. Dr. Murphy diagnosed the fractures in claimant's back and treated him with a back brace, rest, physical therapy, and anti-inflammatory medication. He concluded that claimant's healing period ended on October 19, 1982, and rated the extent of his physical impairment as 25 percent of the whole man.

Based on Dr. Murphy's conclusion that claimant had reached the end of his healing period, but without any release from Dr. Murphy for claimant to return to employment, claimant's total disability benefits were terminated on December 8, 1982. Defendant then

3

commenced paying partial disability benefits which were continued until November 18, 1987.

On August 2, 1989, after claimant's petition to reinstate total disability benefits had been filed, the defendant retained Michael Anderson, a vocational rehabilitation consultant, to evaluate the claimant's employability. He first met with Dr. Murphy on August 30, 1989. During that meeting, Dr. Murphy advised Anderson that claimant could return to light-duty work on a part-time basis, and specifically approved the job descriptions for a sewing machine operator and a parking lot attendant. Although Anderson apparently prepared a report as a result of this interview with Dr. Murphy, the record does not disclose when or if that report was ever provided to the claimant or his attorney.

Dr. Murphy is the only physician who was consulted by the defendant regarding the claimant's employability, and the only physician who expressed an opinion on that subject in testimony before the Workers' Compensation Court.

Dr. Murphy's only opinion regarding claimant's capacity for employment prior to his meeting with Anderson was a July 17, 1989, letter that he wrote to Dr. William Hoopes at the Disability Determination Bureau in which he advised that claimant might be able to return to some type of work, but that it would certainly have to be limited to light duty.

Dr. Murphy has never released claimant to return to any of his former occupations. It was his opinion that claimant could do no

4

heavy lifting, no bending, no stooping, and no crawling; and his prognosis for claimant's ability to return to any type of employment on a five-day-a-week, eight-hour-a-day basis, was guarded.

Claimant has not worked since the date of his accident in 1981, and at the time of trial had qualified for social security disability benefits.

At trial, claimant offered testimony from Ian Steel, a vocational consultant, who evaluated claimant at the request of his attorney. It was his opinion that for all practical purposes, because of his age, lack of training, and physical impairment, claimant was not employable.

Defendant offered testimony from Michael Anderson, who expressed the opinion that claimant had the ability to work as a sewing machine operator, a parking lot attendant, a dispatcher, or several other light-duty jobs.

After listening to the evidence, the hearing examiner of the Workers' Compensation Court concluded that regardless of the availability of the jobs described by Mr. Anderson, claimant had the capacity to perform them, and therefore, has not been totally disabled since October 19, 1982.

On appeal, claimant contends that there was insufficient evidence to support the trial court's decision. Specifically, claimant cites Dr. Murphy's testimony that his return to the work place would initially have to be limited to part-time work, or be

5

preceded by a work-hardening program, and that therefore, Dr. Murphy's release was conditional.

Defendant responds that claimant failed to prove which jobs constitute his normal labor market, and failed to demonstrate a complete inability to perform those jobs. Therefore, according to the defendant, claimant failed to carry his burden of proving total disability.

In *Rath v. State Fund* (1991), 249 Mont. 433, 439, 816 P.2d 1061, 1064, we established the following standard for reviewing findings of fact and conclusions of law of the Workers' Compensation Court:

> This Court will not overturn findings of fact of the Workers' Compensation Court if there is substantial evidence in the record to support them. *Kraft v. Flathead Valley Labor & Contractors* (1990), 243 Mont. 363, 365, 792 P.2d 1094, 1095. Conclusions of law, "whether the conclusions are made by an agency, Workers' Compensation Court, or trial court," will be upheld if the tribunal's interpretation of the law is correct. *Steer v. DOR* (1990), 245 Mont. 470, 803 P.2d 601, 603.

In *Wood v. Consolidated Freightways, Inc.* (1991) 248 Mont. 26, 808 P.2d 502, we held that maximum healing does trigger a re-evaluation of the claimant's disability status, but that disability has nonmedical, as well as medical components. In other words, Dr. Murphy's conclusion that claimant had reached maximum healing by October 19, 1982, and that he had sustained a 25 percent physical impairment, was not a sufficient basis for terminating claimant's total disability benefits.

We further held in *Wood* that:

6

> Once a claimant presents evidence demonstrating that there is no reasonable prospect of employment in his normal labor market, the burden of proof then shifts to the employer to show that suitable work is available.

*Wood*, 808 P.2d at 504.

In this case, whether you accept the testimony of claimant that all of his prior work experience involved heavy labor, or the testimony of Anderson which sets forth the specific jobs claimant had previously performed, claimant demonstrated an inability to return to his prior occupations based on the testimony of Dr. Murphy which limited him to light-duty work and precluded activities such as heavy lifting, bending, stooping, or crawling. Since Dr. Murphy testified that claimant's condition had not changed since 1982, presumably that would have also been his opinion, if asked, at that time.

Therefore, it was necessary for the defendant to comply with the four-part test previously established by the Workers' Compensation Court prior to terminating claimant's disability benefits. That test was established in *Coles v. Seven Eleven Stores*, WCC No. 2000, decided November 20, 1984, *aff'd* 217 Mont. 343, 704 P.2d 1048 (1985), and was approved by this Court in *Wood* as a proper basis for determining whether the employer had provided the minimum information necessary to discharge its duty to investigate the extent of claimant's disability. The test requires:

(1) a physician's determination that the claimant is as far restored as the permanent character of his injuries will permit;

(2) a physician's determination of the claimant's physical restrictions resulting from an industrial accident;

(3) *a physician's determination,* based on his knowledge of the claimant's former employment duties, *that he can return to work,* with or without restrictions, *on the job on which he was injured or another job for which he is fitted by age, education, work experience, and physical condition;*

(4) notice to the claimant of receipt of the report attached to a copy of the report.

*Wood,* 808 P.2d at 505.

In this case, the only element of the test satisfied by December 8, 1982, was the first element.

There was no record of Dr. Murphy's determination of claimant's physical restrictions until his July 17, 1989, letter to the Disability Determination Bureau.

Dr. Murphy has never released claimant to return to his former occupations, and did not indicate that he could return to any other specific job for which he was fitted by age, education, and work experience until his meeting with Anderson on August 30, 1989.

Finally, there is no record of the date on which the defendant provided claimant with any notice that it had received a report from Dr. Murphy releasing claimant to the two jobs which he had approved, or whether in fact, that report was ever provided to the claimant or his attorney.

8

We conclude, however, that there was substantial evidence that as of August 30, 1989, the first three elements of the *Coles* test had been satisfied. When there is proof of the date on which the fourth element of the *Coles* test has been satisfied, there will be substantial evidence for the termination of claimant's total disability benefits, and the commencement of partial disability benefits.

The judgment of the Workers' Compensation Court is, therefore, reversed, and this case is remanded to that court with instructions to reinstate claimant's total disability benefits retroactive to December 8, 1982, and continuing until the date on which claimant or his attorney were provided with notice of the report completed by Dr. James P. Murphy on August 30, 1989. At that point, claimant's disability status may be changed from total disability to partial disability. The partial disability benefits paid during that time shall be credited against the amount due. The rate for partial disability benefits was stipulated by the parties to be $120.50 per week, and shall continue throughout the duration of his partial disability, not to exceed 500 weeks.

Attorney fees in workers' compensation cases are recoverable under § 39-71-611, MCA (1981), when an insurer denies liability for a claim for compensation or terminates compensation benefits and the claim is later adjudged compensable by the Workers' Compensation Judge, or on appeal. *Hartman v. Staley Continental* (1989),

9

236 Mont. 141, 768 P.2d 1380.  In addition to the benefits set forth above, claimant is entitled to an award of attorney fees and costs, to be determined by the Workers' Compensation Court.

Reversed and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

10

Justice Fred J. Weber dissents as follows:

I dissent from the conclusion of the majority opinion that the claimant proved by a preponderance of credible evidence that he had no reasonable prospect of employment in his normal labor market. As a result I also dissent from the judgment of the majority that claimant is entitled to a "reinstatement" of total disability benefits retroactive to December 8, 1982.

The majority has confused the issues by holding that claimant is entitled to a reinstatement of his total disability benefits retroactive to 1982. The only total disability benefits which claimant has received are temporary total disability benefits which the majority agrees were properly terminated on December 8, 1982. Claimant also received permanent partial disability benefits from December 8, 1982 to November 18, 1987. As a result, there are no total disability benefits to be "reinstated."

The contradictions I find are best illustrated by comparing this case to Wood v. Consol. Freightways, Inc. (1991), 248 Mont. 26, 808 P.2d 502, which is the key case used by the majority to reach its conclusions. The analysis of the majority using Wood as its foundation was neither presented nor argued by the parties. In Wood the appeal involved the termination of the worker's temporary total disability benefits and the award of permanent partial disability benefits. The appeal was taken from that determination. This Court reversed the lower court. Contrast this to the present case where the temporary total disability benefits were terminated on December 8, 1982 and partial disability benefits commenced on

11

the same date. No appeal was taken from the termination of temporary total benefits or the granting of permanent partial benefits. Here, the claimant waited more than six and one-half years before raising any issue. The issue was raised by a petition claiming a right to permanent total disability benefits which was filed after the partial disability benefits had expired. I emphasize this because of the essential unfairness of the presentation of an issue grounded on facts, including medical facts which took place almost seven years prior to the filing of the petition. The contrast between this case and Wood is that all parties in Wood had a reasonable opportunity to present their questions of both fact and law upon an appeal from the 1982 determination. Here, that was not done, and the absence of that procedure has been disregarded by the majority.

The next contrast between this case and Wood is that the majority in Wood pointed out there was substantial credible evidence to support a finding that Wood was unable to return to his normal labor market, emphasizing that three out of four physicians concluded that Wood could no longer perform the heavy physical labor employment he had performed. Thus, claimant had met his burden of demonstrating "no reasonable prospect of employment" in his labor market. In contrast, as will be subsequently emphasized in our review of the facts, in this case the substantial evidence is to the contrary, with very limited evidence submitted on the part of the claimant--and most important, with a failure on the

12

part of the claimant here to meet the evidentiary standard which was to be applied in his case.

In reaching his conclusion that claimant was not entitled to permanent total disability benefits, the Hearing Examiner made extensive findings and conclusions. Of significance are the following findings with regard to the date of injury and dates of claim.

> 5. Defendant accepted liability for claimant's injury and paid temporary total disability benefits from October 15, 1981 through December 8, 1982. At that time such benefits were converted to permanent partial disability benefits. (Uncontested fact No. 4) <u>Claimant took no action regarding such conversion for approximately six and one-half years, until he filed the petition herein on June 28, 1989.</u>

> 6. Claimant's <u>permanent partial disability benefits were terminated on November 18, 1987.</u> (<u>Id</u>) <u>Claimant did not question the termination of such benefits for approximately one and one-half years,</u> until the filing of this petition. (Emphasis added.)

The Hearing Examiner concluded there was no dispute between the parties that the claimant's entitlement to temporary total disability benefits ended when maximum healing was reached on October 19, 1982. Nonetheless the majority remands to the lower court with instructions to "reinstate claimant's total disability benefits retroactive to December 8, 1982." This is a contradiction in terms. The only total disability benefits which could have been "reinstated" are the temporary total benefits.

The Hearing Examiner set forth the following standard of proof which was to be applied in this case:

> The claimant must prove, by a preponderance of the credible evidence, that he has no reasonable prospect of employment in his normal labor market. . . .

13

To establish the existence of no reasonable prospect of employment in the normal labor market, a claimant must introduce substantial credible evidence of (1) what jobs constitute his normal labor market, and (2) a complete inability to perform the employment and duties associated with those jobs because of his work related injury. . .

In holding that claimant demonstrated an inability to return to his prior occupations, and therefore met the initial test of Wood, the majority did not analyze the findings and conclusions of the examiner and the court.  The examiner made extensive findings of fact which included the following:

> 3.  Claimant's prior work history consists of work as a delivery person, store clerk, forest service employee, hod carrier, structural iron worker, wireman, welder, maintenance engineer and boilermaker. . . .

### Medical Evidence

. . .

> 7.  Claimant's treating physician for his low back condition has been Dr. James P. Murphy. . . .

. . .

> 9.  Dr. Murphy regularly treated the claimant as he improved to a point that Dr. Murphy reported that the claimant had reached maximum healing as of October 19, 1982 and rated his permanent partial impairment as twenty-five percent of the whole person.

> 10.  Claimant did not return for treatment from Dr. Murphy for five years after the October 19, 1982 visit. On September 9, 1987, Dr. Murphy examined the claimant and found him to be essentially the same as he was at the October 19, 1982 examination. . . .

. . .

> 12.  Claimant was last examined by Dr. Murphy for his back condition on July 10, 1989, for purposes of a disability evaluation for Social Security purposes.  As a result of this examination, Dr. Murphy wrote to Dr. William Hoopes at the Disability Determination Bureau stating "I think he may be able to return to some type of work, but it would certainly have to be light-duty profile."  In such letter Dr. Murphy also stated:  "I do

14

think he should be restricted from any prolonged bending, crawling, stooping or heavy lifting."

13. On August 30, 1989, Dr. Murphy met with Michael Anderson, a certified rehabilitation counselor. Dr. Murphy filled out a physical capacities form in which he stated that the claimant could return to light-duty work at that time, but starting out part-time. He released the claimant to return to work as a sewing machine operator and a parking lot attendant. . . .

. . .

15. There is no medical evidence relating any of the claimant's other physical difficulties, except for his low back problems, to his industrial injury of October 14, 1981.

It is important to note that the July 10, 1989 examination by Dr. Murphy was for Social Security disability evaluation purposes, and not specifically for workers' compensation purposes. There is no medical evidence relating any of the claimant's other physical difficulties, except for his low back problems, to his industrial injury of October 14, 1981. The findings of the Hearing Examiner included the following:

Vocational Evidence

16. Claimant retained Ian Steel, a vocational rehabilitation consultant, who interviewed the claimant and read the depositions and transcript of this case. He reviewed the medical records and the vocational consultant's report of Michael Anderson. . . .

17. Mr. Steel concluded that, at this time with the claimant's physical limitations, it would be difficult to place the claimant in employment which limits him to very light work. At sixty years old, retraining was not feasible and Mr. Steel concluded that the claimant is basically unemployable at this time. . . .

18. On cross-examination, Mr. Steel conceded that claimant could perform the job of a dispatcher assuming that he could find a job opening. . . .

15

19. Looking back to claimant's maximum healing date of October 19, 1982, Mr. Steel testified as follows:

Q. In other words, if in Mr. Ness's cases he tried to go back to work back when he reached maximum healing, it would be a lot better situation than it would be attempting something, for example, now.

A. Definitely. (Emphasis added.)

20. Claimant has failed to prove, by a preponderance of the credible evidence, that he has no reasonable prospect of employment in his normal labor market.

21. Claimant is employable and has been employable since the time he was determined to have reached maximum medical improvement on October 19, 1982. Specific positions have been approved by Dr. Murphy, claimant's treating physician. No other medical evidence was presented by the claimant to dispute his medical opinions.

22. Michael Anderson's report concludes that the positions appraised by Dr. Murphy and within the capability of the claimant include sewing machine operator, inspector, radial arm or power saw operator, parking lot attendant, picture framer or dispatcher.

In his conclusions of law, the Hearing Examiner stated as follows:

The claimant's normal labor market consists of those jobs at which he has already worked and any other jobs for which his prior formal education and vocational experience, when coupled with his age and physical condition, directly qualify him. . . .

Applying the above criteria to claimant's situation, it is clear that the medical evidence and preponderance of the vocational evidence support the conclusion that the claimant does have employment opportunities as a sewing machine operator/inspector, a radial arm or power saw operator, a parking lot attendant or a receptionist at a car rental agency. Even claimant's rehabilitation counsellor, Mr. Steel, admitted that the claimant could probably perform the job of dispatcher. His concern about the actual availability of jobs in Butte is not a valid concern. The test is whether a job exists in the market and whether the claimant can perform that job.

16

> Claimant has failed to meet his burden of proving by a preponderance of the credible evidence that he is entitled to permanent total disability benefits retroactive to October 19, 1982.
>
> Claimant's counsel did not raise the issue as to what, if any, permanent partial disability benefits the claimant may be entitled and this decision does not consider that issue. (Emphasis added.)

It is at this point that I strongly disagree with the majority conclusion. I would hold that the examiner established the proper standard of proof to be applied. I would further hold that there clearly is substantial evidence to support the findings of the examiner and the court. Because of that analysis of the facts, we would not even get to the Wood analysis which was relied upon by the majority, because the precondition to the application of the Wood tests is the proof that the claimant was unable to return to his normal labor market.

The majority states that claimant demonstrated an inability to return to his prior occupations based on the testimony of Dr. Murphy which precluded activities such as heavy lifting, bending, stooping, or crawling. That disregards the conclusion of the examiner that there were a number of jobs which claimant could perform, including a job such as a dispatcher. It is also significant to emphasize that even the claimant's expert conceded that if claimant had tried to go back to work in 1982 rather than seven years later in 1989, there would have been a much better situation for attempting other types of work. I, therefore, emphasize Findings 20 through 22 where the examiner in substance had concluded that claimant had failed to prove that he had no

17

reasonable prospect of employment in his normal labor market, and that he was employable on October 19, 1982. At that point the Hearing Examiner correctly concluded that claimant had failed to meet his burden of proving by a preponderance of credible evidence that he was entitled to permanent total disability benefits. At that point, the majority takes a unique twist. Instead of discussing at length the evidence showing whether or not claimant had met the tests properly promulgated by the examiner, the majority almost casually concluded that claimant had proved he had no reasonable prospect of employment in his normal labor market and then proceeded to apply the four part test established in Wood. In Wood it was appropriate to suggest that the burden should shift to the insurer and to analyze the evidence submitted by the insurer as being insufficient to meet the burden placed upon the insurer. That was of course not true here where no appeal was taken from the original determination. Now, close to seven years after the determination by the Workers' Compensation Court, claimant filed his petition and relief is granted to him because the insurer failed to present evidence on a theory not presented at the time of the 1982 hearing, not considered by appeal from that determination in 1982, and adopted by this Court a number of years subsequent to the 1982 determination. I conclude that is essentially unfair to all parties.

I again emphasize that the majority has incorrectly stated that it requires the Workers' Compensation Court to "reinstate"

18

claimant's total disability benefits retroactive to December 8, 1982. There are no such benefits to be reinstated.

I would affirm the conclusion of the Workers' Compensation Court that claimant has failed to meet his burden of proving by a preponderance of credible evidence that he is entitled to permanent total disability benefits retroactive to October 8, 1982.

_____
Justice

Chief Justice Jean A. Turnage and Justice Karla M. Gray concur in the foregoing dissent.

_____
Chief Justice

_____
Justice

19

March 24, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

R. Lewis Brown, Jr.
Butte Legal Center
305 E. Front St.
Butte, MT 59701

Andrew J. Utick
Utick & Grosfield
P.O. Box 512
Helena, MT 59624-0512

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
      Deputy