JUSTICE ERDMANN
dissenting.
I respectfully dissent from the Court’s opinion.
*13 I do not agree with the majority that the Workers’ Compensation Court made no finding that Carrillo was or was not on her break at the time of her injury. In Finding of Fact No. 10, the Workers’ Compensation Court found that Carrillo left the Donovan building to go to the Holter Museum gift shop, after which she intended to return to the Donovan building to pick up a co-worker and then go on break. This finding accurately reflects Carrillo’s testimony that after she purchased the mug she planned to return to the Donovan building to go on break with her co-worker.
Carrillo’s deposition states as follows:
Q. Why don’t you tell me just in your own words, take as long or short as you like, what happened on March 2nd, 1993 when you got hurt. Why don’t you start with what you were doing just before you went on break.
A. Well, we had just finished or we had started to discuss and were contemplating what we were going to do for Beth, my supervisor, for her party and we were trying to decide who we were going to have come, what we were going to have, what kind of present, if we were still going to continue to look for the present that I hadn’t been able to. find. I had spoken with — I don’t remember if it was Kelly or somebody there — they all knew that I had anticipated going up to the Holter Museum to look for the present for Beth. I had talked to Sandy before I left the building and asked her if she wanted to come along and she said “No.”
Q. Excuse me, Sandy Warren?
A. Yes. And she said, “No.” She says, ‘When you get through with the Holter Museum, why don’t you come back, pick me up, and we’ll go over to the Fuller Building on break,” and I said “Okay,” and I left the building.
Q. You left the building and started to cross the intersection and you were hit by a vehicle?
A. Right.
Carrillo testified to the same effect at trial:
Q. This morning you testified about Sandy Warren calling and asking you to go on break, and I believe you told her that you wanted to go to the Holter Museum first; is that right?
A. Yes.
Q. You agree, don’t you, that it was your intent after you went to the Holter Museum that you were going to go back and get Sandy *14 and then you were going to go on break on the day you were hit by that vehicle?
A. Would you rephrase that, please?
Q. Yes.
[Court reporter read back the previous question]
A. Yes.
Later in her testimony, Carrillo’s attorney attempted to rehabilitate her deposition and her earlier testimony with the following question and answer:
Q. Because it’s critical to this situation, if you were to say, ‘Yes, I was on break,” or “No, I was not on break,” when you left the Donovan Building to go to the Holter Museum, would you say yes or no?
A. Yes.
The majority refers to this latter question and answer as Carrillo’s “uncontroverted testimony at trial” and relies on it exclusively. The record is clear, however, that Carrillo herself controverted that testimony.
This Court’s function on review is confined to determining whether there is substantial evidence to support the findings and not to determine whether there is sufficient evidence to support contrary findings. Davis v. Jones (1985), 216 Mont. 300, 303, 701 P.2d 351, 353. Here, the Workers’ Compensation Court observed Carrillo’s demeanor, assessed her conflicting testimony and made a finding accepting that portion of her testimony that she intended to go on break after shopping. There is substantial evidence in the record — through Carrillo’s own testimony — that she was on a personal errand when she was injured and that she intended to start her break when she returned to the Donovan building. The majority ignores Carrillo’s testimony and the standard this Court must apply when conflicting evidence exists. Where there is conflicting evidence, it is the Workers’ Compensation Court’s duty, and not this Court’s, to resolve such conflicts. Olson v. Westfork Properties, Inc. (1976), 171 Mont. 154, 157, 557 P.2d 821, 823.
This Court reviews the Workers’ Compensation Court’s conclusions of law to determine whether they are correct. CNA Ins. Co. v. Dunn (1995), 273 Mont. 295, 298, 902 P.2d 1014, 1016. In the present case, I would hold that the Workers’ Compensation Court reached the correct result, although it improperly relied on § 39-71-407(3), MCA, in doing so. The Workers’ Compensation Court analyzed Carrillo as *15 a “traveling employee” under § 39-71-407(3), MCA, and concluded that her injury did not arise out of and in the course of employment. A “traveling employee” is defined as an employee “whose work entails travel away from the employer’s premises.” See Larson’s Workmen’s Compensation Law, vol. 1A, § 25.00 at 5-275 (1996). As Carrillo was not required to travel from the Donovan building, I agree with the majority that § 39-71-407(3), MCA, is not applicable to this case.
Section 39-71-407(1), MCA (1991), states in part that “[e]very insurer is liable for the payment of compensation ... to an employee ... who receives an injury arising out of and in the course of his employment.” (Emphasis added.) The injuries must have arisen out of and in the course of her employment in order to impose liability on the insurer.
In Courser v. Darby School District No. 1 (1984), 214 Mont. 13, 692 P.2d 417, we identified four controlling factors to determine whether an injury is work-related: (1) whether the activity was undertaken at the employer’s request; (2) whether the employer, either directly or indirectly, compelled the employee’s attendance at the activity; (3) whether the employer controlled or participated in the activity; and (4) whether both employer and employee mutually benefited from the activity. Courser, 692 P.2d at 419. Applying the facts of the present case to the above factors leads to the clear conclusion that Carrillo’s injuries were not work-related.
Blue Cross Blue Shield (BCBS) did not request that Carrillo make the trip to the Holter Museum to purchase the coffee mug nor did it directly or indirectly compel the errand. Carrillo’s supervisors did not control or participate in the quest for the mug and even though the gift and employee party may have boosted employee morale, such a general benefit to the employer is not enough by itself to bring such recreational activity within the course of employment boundaries. See Larson’s Workmen’s Compensation Law, vol. 1A, §§ 22.33 at 5-170 and -171 (1996). This Court has previously held that a person injured while on a personal errand is not acting within the course and scope of her employment when injured. Strickland v. State Comp. Mut. Ins. Fund (1995), 273 Mont. 254, 259, 901 P.2d 1391, 1394.
In the present case, the majority errs by making a finding of fact that Carrillo was on her break instead of reviewing whether substantial evidence supports the Workers’ Compensation Court’s finding that she intended to go on break after returning from the Holter Museum gift shop. Not surprisingly, the majority then places much reliance on Professor Larson’s discussion of whether injuries which *16 occur off the employer’s premises during rest periods or coffee breaks are compensable. The majority’s entire discussion of the Larson criteria is premised on its own finding that Carrillo was on her break when the injury occurred. On the contrary, I submit that substantial evidence supports the Workers’ Compensation Court’s finding that she intended to go on break after returning from the museum gift shop, and therefore, the Larson criteria do not apply. Nevertheless, even assuming arguendo that the majority is correct and Carrillo was on her break, her injuries are not compensable even under the Larson criteria.
Larson sets forth the following factors: (1) the duration of the break and whether the interval is a right fixed by the employment contract; (2) whether it is a paid interval; (3) whether there are restrictions on where the employee can go during the break; and (4) whether the employee’s activity during the break period constitutes a substantial personal deviation. Larson, vol. 1, § 15.54, at 4-184 and -185. Larson states that:
If the employer, in all the circumstances, including duration, shortness of the off-premises distance, and limitations on off-premises activity during the interval can be deemed to have retained authority over the employee, the off-premises injury may be found to be within the course of employment.
Larson, vol. 1, § 15.54, at 4-185.
In the present case, I agree that as a BCBS employee Carrillo was entitled to a break and was paid for the time. However, I do not agree with the majority that BCBS restricted Carrillo on where she could go during the break. The majority opinion correctly notes that Carrillo testified that the breaks were not required and that she was free to leave the building during her break and to go anywhere she wanted. If she chose to undertake a personal errand during her break and was injured, she was outside the scope of her employment. Moreover, I do not agree with the majority’s conclusion that her activity during the break did not constitute a substantial personal deviation. On the contrary, Carrillo decided to run a personal errand beyond any authority retained by BCBS. Carrillo was not required by BCBS or her supervisor to purchase the mug and, even though the journey was only one and one-half blocks away from the work place, the purpose was a personal one. The trip to obtain the mug therefore constituted a substantial personal deviation from her employment.
The Workers’ Compensation Court made a finding that Carrillo was not on her break when the injury occurred and that finding is *17 supported by substantial evidence, including Carrillo’s own testimony. Under the traditional Courser criteria and based on our previous holding in Strickland, I would hold that Carrillo was injured when she was on a personal errand outside the scope of her employment with BCBS. Her injuries did not arise out of the course of her employment and therefore are not compensable.
I would affirm the judgment below.
JUSTICE GRAY joins in the foregoing dissenting opinion.